COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel E. Durchslag (017213)
Email: ddurchslag@CDQlaw.com
Gabriel R. Aragon (024649)
Email: garagon@CDQlaw.com
    Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SPINNAKER HOLDINGS, LLC, a Texas Limited Liability Company, SYNERGY ENVIRONMENTAL, LLC, an Arizona Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF PHOENIX, a political subdivision of the State of Arizona, et al.<br><br>Defendants. | Case No:<br><br>**VERIFIED COMPLAINT** |

Plaintiffs Spinnaker Holdings, LLC ("Spinnaker") and Synergy Environmental, LLC ("Synergy") (collectively, "Plaintiffs"), for their Verified Complaint against Defendants in this action, allege as follows:

## NATURE OF THIS ACTION

1.      This is a civil action brought under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA"), for the recovery of costs incurred by Plaintiffs, on behalf of the Roosevelt Irrigation District ("RID") and RID's consultant in the matter, Gallagher & Kennedy ("G&K"), in responding to Defendants' release or threatened release of hazardous

1  substances into soil and groundwater that impacts or threatens to impact RID groundwater

2  wells.  Defendants are jointly and severally liable for those costs under CERCLA.  Plaintiffs

3  also seek a declaration of Defendants' liability pursuant to Section 113(g)(2) of CERCLA, 42

4  U.S.C. § 9613(g)(2), to recover further response costs as may be incurred relating to this

5  matter.

6  2.  Plaintiffs bring this independent action in light of a recent Order (Doc. No.

7  1366) entered by the United States District Court for the District of Arizona in a separate

8  matter captioned <u>Roosevelt Irrigation District v. Salt River Project Improvement and Power</u>

9  <u>District et al.</u>, No. 2:10-CV-00290 DAE-BGM, in which that Court entered findings bearing

10  on who the proper parties are to seek recovery of response costs incurred and/or to be

11  incurred in that CERCLA action brought by RID, including certain costs incurred by

12  Plaintiffs to investigate, develop and implement Arizona Department of Environmental

13  Quality ("ADEQ") approved response actions to address the contaminated groundwater

14  impacting public health, welfare and the environment, and RID's wells and water supply.  In

15  an abundance of caution given this recent Order and to ensure their right to recovery of all

16  appropriate response costs is preserved and asserted, Plaintiffs bring this action to the extent

17  any judicial holding or ruling is entered or upheld suggesting that RID (or its agent, G&K)

18  does not have the standing to seek or secure the recovery of response costs incurred by

19  Plaintiffs for and on behalf of RID, individually or collectively, and that Plaintiffs must

20  pursue those incurred response costs directly from Defendants through a separate cause of

21  action.  Plaintiffs reserve their rights under 42 U.S.C. § 9613(g)(2) to bring subsequent cost

22  recovery actions, if necessary, for other incurred response costs.

23  **JURISDICTION AND VENUE**

24  3.  This action arises under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

25  4.  This Court has jurisdiction over this action pursuant to: 28 U.S.C. § 1331

26  (federal question), 28 U.S.C. § 2201(a) (declaratory judgment), and 42 U.S.C. § 9613(b)

27  (Section 113(b) of CERCLA).

28  5.  Venue is proper in the United States District Court for the District of Arizona

COHEN DOWD QUIGLEY

2

1   pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. §§ 9607(a), 9613(b). The claims asserted in

2   this Complaint arose in Maricopa County, Arizona; the release and threatened release of

3   hazardous substances have occurred and are occurring in Maricopa County, Arizona; and the

4   response costs have been incurred or will be incurred by Plaintiffs in Maricopa County,

5   Arizona.

6          6.     Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), Plaintiffs have

7   provided or will timely provide copies of this Complaint to the Attorney General of the

8   United States and to the Administrator of the Environmental Protection Agency.

**PARTIES**

**Plaintiffs**

11         7.     Plaintiff Spinnaker is a Limited Liability Company organized under Texas law

12  and which does business in Arizona.

13         8.     As relevant to this action, Spinnaker entered into a contract directly with RID

14  to fund, design, build, and operate groundwater treatment facilities at certain RID well sites

15  in the WVBA WQARF Site. This action was initially developed as part of a pilot technology

16  demonstration that was expanded to provide groundwater treatment at the four most highly

17  contaminated RID wells sites identified in the ADEQ-approved Modified ERA Work

18  Plan. Spinnaker also entered directly into a three-year "own-operate" contract with RID to

19  implement this portion of the Modified ERA, once it was successfully demonstrated that it

20  was feasible to develop wellhead treatment at the target RID wells and the technology was

21  proven safe and reliable at removing the contaminants from the groundwater and preventing

22  the uncontrolled release of these hazardous materials (known human carcinogens) into the

23  environment and surrounding neighborhoods.

24         9.     Spinnaker is a "person" as that term is defined in Section 101(21) of

25  CERCLA, 42 U.S.C. § 9601(21).

26         10.    Plaintiff Synergy is a Limited Liability Company organized and operating in

27  Arizona. Synergy was formed in February 2010.

28         11.    In February 2010, Synergy began providing professional consulting services to

COHEN DOWD QUIGLEY

3

COHEN DOWD QUIGLEY

1   G&K.  The services are for G&K's direct support of the RID groundwater response action
2   and are subject, in part, to a G&K-RID Engagement Letter that was originally executed in
3   2008.  Synergy entered into contract with G&K on or about March 26, 2010 and has
4   provided and continues to provide technical services in the area of hydrogeology,
5   engineering, general project management, and other associated response tasks as directed by
6   G&K.  As described more fully in this Complaint, Synergy was directed by G&K, on behalf
7   of RID, to develop, implement, and conduct remedial actions to address the widespread
8   impact of groundwater contaminated with hazardous substances, including the known
9   human carcinogen trichloroethene ("TCE")  in order to protect and restore RID's wells and
10  water supply for unrestricted use, and to mitigate the risk of public exposure to the
11  uncontrolled emissions of hazardous substances associated with the extraction and
12  conveyance of contaminated groundwater from RID wells in West Phoenix.  The general
13  scope of the RID groundwater response action was specified in an Agreement to Conduct
14  Work that RID entered into with ADEQ on October 8, 2009 requiring RID to conduct an
15  Early Response Action ("ERA") and perform a Feasibility Study ("FS") to address the
16  groundwater contamination impacting multiple RID water supply wells, subject to the
17  oversight of ADEQ.  Synergy's contract stipulates that compensation for Synergy services is
18  subject to funding that G&K will provide on or behalf of the RID groundwater response
19  action and in accordance with provisions established in the RID-G&K Engagement Letter.
20  Synergy has incurred and will continue to incur response costs as a direct result of its
21  response work and efforts relating to this action.

22      12.    Synergy is a "person" as that term is defined in Section 101(21) of CERCLA,
23  42 U.S.C. § 9601(21).

24      13.    Plaintiffs have the legal right and standing to pursue and seek cost recovery
25  for the investigation, development, and implementation of a response action to protect and
26  restore RID's wells and water supply from the release and threatened release of hazardous
27  substances.

28  . . .

4

**COHEN DOWD QUIGLEY**

**Defendants**

14.    Each Defendant identified in this Complaint is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

15.    Each Defendant is a current or former "owner or operator" of a "facility" within the meaning of Sections 101(9) and (20) of CERCLA, 42 U.S.C. §§ 9601(9) and (20).

16.    Upon information and belief, Alcoa, Inc. ("Alcoa"), a Pennsylvania corporation, and Reynolds Metals Company ("Reynolds"), a Delaware corporation, are covered persons liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

17.    Upon information and belief, Air Liquide America Specialty Gases, L.L.C. ("Air Liquide"), a Delaware limited liability company, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

18.    Upon information and belief, Dolphin, Incorporated ("Dolphin"), an Arizona corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

19.    Upon information and belief, The United States Department of Energy is an agency of the United States responsible for the Western Area Power Administration, which is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

20.    Upon information and belief, Honeywell International, Inc. ("Honeywell"), a Delaware corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

21.    Upon information and belief, Corning Incorporated ("Corning"), a New York corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

22.    Upon information and belief, City of Phoenix, a political subdivision of the State of Arizona, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

23.    Upon information and belief, Maricopa County, a political subdivision of the State of Arizona, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42

U.S.C. § 9607(a).

24.    Upon information and belief, Milum Textile Services Co. ("Milum"), an Arizona corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

25.    Upon information and belief, ITT Corporation, an Indiana corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

26.    Upon information and belief, Meritor, Inc. ("Meritor"), a Nevada corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

27.    Upon information and belief, Arizona Public Service Company ("APS"), an Arizona corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

28.    Upon information and belief, NUCOR Corporation ("NUCOR"), a Delaware corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

29.    Upon information and belief, Prudential Overall Supply, a California corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

30.    Upon information and belief, Textron Inc. ("Textron"), a Delaware corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

31.    Upon information and belief, Univar USA, Inc. ("Univar"), a Washington corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

32.    Upon information and belief, Union Pacific Railroad Company ("UPRR") , a Delaware corporation, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

33.    Upon information and belief, Walker Power Systems, Inc. ("Walker Power Systems"), an Arizona corporation, is a covered person liable under Section 107(a)(1) or (2)

of CERCLA, 42 U.S.C. § 9607(a).

34.     Upon information and belief, Freescale Semiconductor, Inc. ("Freescale"), a Delaware corporation, is a covered person liable under CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a).

35.     Upon information and belief, ChemResearch Co., Inc. ("ChemResearch"), an Arizona corporation, is a covered person liable under CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a).

36.     Upon information and belief, American Linen Supply Company, ("American Linen"), a Washington corporation, is a covered person liable under CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a).

37.     Upon information and belief, Romic Environmental Technologies Corporation ("Romic"), a California corporation, is a covered person liable under CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a).

38.     Upon information and belief, Salt River Project Agricultural Improvement and Power District ("SRP"), a political subdivision of the State of Arizona that also operates under the name of Salt River Project and SRP, is a covered person liable under Section 107(a)(1) or (2) of CERCLA, 42 U.S.C. § 9607(a).

39.     Upon information and belief, Union Oil Company of California ("Union Oil"), a California corporation, is a covered person liable under CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a).

40.     Upon information and belief, Kinder Morgan Energy Partners, L.P. ("Kinder Morgan"), a Delaware limited partnership, is a covered person liable under CERCLA Section 107((1) or (2), 42 U.S.C. § 9607(a).

## **GENERAL ALLEGATIONS**

### **RID's Groundwater Wells**

41.     RID is located in the western portion of Maricopa County, Arizona, an area that has experienced substantial residential, commercial and industrial growth that is projected to continue and accelerate in future years. RID owns and operates a series of

7

1  groundwater wells to provide water to public and private entities and individuals in western
2  Maricopa County for current and reasonably foreseeable end uses.

3      42.    RID currently pumps groundwater from its wells that is transported through a
4  network of canals for agricultural, landscape watering, and municipal use on land located
5  within the District. RID is situated within the City of Buckeye and the City of Goodyear,
6  municipalities that have expressed interest in utilizing groundwater pumped from RID's
7  wells in the foreseeable future to supply drinking water for residential and commercial uses
8  on their lands within the District.   In addition, other entities (including the City of Phoenix,
9  the City of Tolleson and SRP) have expressed potential interest in pumping groundwater
10  from their existing wells in the same area for municipal use as a drinking water supply for
11  residential and commercial development in the foreseeable future.

12                    **The Contamination Impacting RID's Wells**

13      43.    Over 20 of RID's groundwater wells have been impacted by hazardous
14  substances known as chlorinated volatile organic compounds ("VOC Contaminants" or
15  "VOCs"), including, but not limited to, TCE, also known as trichloroethylene;
16  tetrachloroethene ("PCE"); 1,1,1-trichloroethane ("TCA"); 1,1-dichloroethane ("1,1-DCA");
17  1-1-dichloroethene ("1,1-DCE"); and 1,2-dichloroethane ("1,2-DCA"); cis-1,2-
18  dichloroethene ("cis-1,2-DCE").   These VOC Contaminants impacting RID's wells are
19  designated as "hazardous substances" under CERCLA and considered by the Environmental
20  Protection Agency ("EPA") to be severely harmful to human health and the environment.
21  Other RID groundwater wells that have not yet been impacted by the VOC Contaminants
22  are threatened by the same hazardous substances.

23      44.    RID did not release any of the VOC Contaminants or any other hazardous
24  substance into its groundwater wells.  Rather, as described below, the hazardous substances
25  in and threatening RID's groundwater wells are the result of releases from facilities owned
26  and operated by other parties, including Defendants, and the flow of VOC Contaminants
27  into and within the groundwater supplying RID's wells.
28  . . .

8

COHEN DOWD QUIGLEY

**ADEQ's Investigation and Findings Concerning the Sources of Contamination**

45.     The ADEQ, established by the Arizona Legislature in response to concerns over groundwater quality, is the state regulatory agency charged with responsibility to investigate groundwater contamination and enforce Arizona's environmental laws.  ADEQ administers the Water Quality Assurance Revolving Fund ("WQARF") to support the remediation of groundwater contamination within Arizona. At the federal level, the EPA administers CERCLA to enforce the federal environmental statutes and has concurrent jurisdiction with ADEQ for the investigation and remediation of groundwater pollution.

46.     After groundwater contamination was detected at a facility operated by Union Oil in west Phoenix, ADEQ began conducting a groundwater investigation that led to the establishment of the West Van Buren Area ("WVBA") WQARF site ("WVBA WQARF Site").  The groundwater wells owned and operated by RID that are contaminated or threatened by VOC Contaminants are located within the WVBA WQARF Site.

47.     In furtherance of its investigation of the WVBA WQARF Site which began in 1987, ADEQ, with the assistance of technical consultants, conducted extensive field work and analysis (including groundwater monitoring, soil sampling, evaluation of the disposal practices of industrial and commercial business operations), issued interim reports and initiated enforcement proceedings against certain current and former owners and operators of facilities responsible for groundwater contamination.  As part of the ongoing investigation of the WVBA groundwater, the Arizona Department of Health Services ("ADHS") completed a health risk assessment in 1992.  The study concluded there would be significant health effects from domestic consumption of groundwater containing the VOC Contaminants at concentrations similar to those found in ADEQ monitoring wells located in the WVBA WQARF Site.

48.     ADEQ issued its final report, entitled REMEDIAL INVESTIGATION REPORT, WEST VAN BUREN WQARF REGISTRY SITE (the "WVBA RI Report") in August of 2012. ADEQ concluded in its final report that the groundwater contamination in the WVBA, which as alleged above includes the groundwater underlying RID's wells, "is the areal

COHEN DOWD QUIGLEY

1  projection of the western portion of a large commingled plume of contaminated

2  groundwater in Phoenix, Arizona" and that "[c]ontributors to this commingled plume

3  include industrial facilities and contaminated groundwater from the east, as regional

4  groundwater flow is generally westward."

5       49.  More specifically, the WVBA RI Report concludes that "[*g*]*roundwater*

6  *contamination enters the WVBA from the east from the Motorola 52nd Street Federal Superfund Site OU3*

7  *area.*" The EPA established the Motorola 52nd Street Superfund Site ("M-52 Superfund Site")

8  in 1989 after investigation revealed massive groundwater contamination originating from the

9  52nd Street plant owned and operated by Motorola, Inc. (as alleged below, Defendant

10  Freescale is the successor to and responsible for Motorola's CERCLA liabilities). In its

11  Findings of Fact entered in connection with the M-52 CERCLA enforcement proceedings,

12  the EPA found that "[*g*]*roundwater contaminated with VOCs from the Motorola and Honeywell*

13  *Facilities, as well as other potential sources within OU1 and OU2 commingle and flow westward into OU3,*

14  *where it commingles with contamination from sources within OU3." In the Matter of: Motorola 52nd Street*

15  *Superfund Site Operable Unit 3*, USEPA Region 9, Docket No. 2008-17, ¶ 13 (emphasis

16  added).[1]

17       50.  In addition, ADEQ also concluded in the WVBA RI Report that

18  "[*c*]*ontaminated groundwater also appears to enter the WVBA from the north in the central portion of the*

19  *site from the West Osborn Complex (WOC) WQARF Registry Site.*" As explained below, the West

20  Osborn Complex WQARF Site ("WOC WQARF Site") is part of the West Central Phoenix

21  Area WQARF Sites, which are located adjacent to and directly north of the WVBA.

22       51.  Thus, the contamination and threatened contamination of RID's wells in

23  southwest Phoenix is associated with facilities located within three regional sites which have

24

25  _____

25  1  ADEQ also has concluded that groundwater contamination in the OU3 area had

26  migrated from the OU2 and OU1 areas within the M-52 Superfund Site. *See e.g.*, final ou3

27  phase III groundwater remedial investigation and feasibility study work plan, August 2010 at

27  3-10 ("The OU3 Study Area is downgradient of the OU2 Study Area. Prior investigations

28  and monitoring within the OU1 and OU2 Study Areas confirm the presence of chlorinated

28  VOCs").

been identified under CERCLA, 42 U.S.C. §§ 9601 to 9675, or Arizona's WQARF program, A.R.S. §§ 49-281 to 49-298.  The three sites are as follows:

- **Motorola 52nd Street Superfund Site**.  The M-52 Superfund Site is listed on EPA's National Priorities List, 40 C.F.R. pt. 300, App. B.  M-52 has been subdivided into three operable units ("OUs").  According to EPA, the approximate boundaries of OU1 are Palm Lane to the north, 52nd Street to the east, Roosevelt Street to the south and 44th Street to the west.  According to EPA, the approximate boundaries of OU2 are Roosevelt Street to the north, 44th Street to the east, Buckeye Road to the south and 18th Street to the west.  According to EPA, the approximate boundaries of OU3 are McDowell Road to the north, 20th Street to the east, Buckeye Road to the south and 7th Avenue to the west.  EPA has investigated and identified certain of the Defendants as PRPs and sources of hazardous substances in M-52.

- **West Van Buren Area WQARF Site.**  The WVBA WQARF Site is listed on ADEQ's WQARF Registry established under A.R.S. § 49-287.01(D).  The approximate boundaries of the WVBA WQARF Site are McDowell Road to the north, 7th Avenue to the east, Lower Buckeye Road to the south and beyond 75th Avenue to the west.  ADEQ has investigated and issued a draft and final Remedial Investigation Report, which identifies certain of the Defendants as PRPs and sources of hazardous substances in the WVBA WQARF Site.

- **West Central Phoenix Area WQARF Sites.**  The West Central Phoenix ("WCP") Area was originally a single, distinct WQARF Site that was subdivided into five separate WQARF sites in 1998 that are designated as the WCP-East Grand Avenue, WCP-West Grand Avenue, WCP-North Plume, WCP-North Canal Plume, and WCP-West Osborn Complex, each of which is listed on ADEQ's WQARF Registry.  The WCP Area is bounded approximately by Campbell Road to the north, 27th Avenue to the east, McDowell Road to the south and 51st Avenue to the west.  ADEQ has investigated and identified certain of the Defendants as PRPs and sources of hazardous substances in the WCP Area WQARF sites.

11

52.     The relative positions of the foregoing Sites and RID's groundwater wells presently impacted by the groundwater contamination are depicted in this map:



**Areal Extent of Regional Groundwater Contamination from Commingled Plumes Impacting And Threatening RID Wells in the WVBA WQARF Site**

**Defendants Are Responsible for the VOC Contamination**

53.     As alleged above, commingled plumes of VOC Contaminants impacting or threatening to impact RIDs groundwater wells emanate from the WVBA Site, the WCP Area sites and the M-52 Superfund Site. Various site studies indicate that a wide range of industries operating in all three areas used large quantities of chlorinated solvents such as PCE and TCE.   Many of these industrial operations began 50 and 60 years ago when the post-World War II manufacturing economy expanded greatly in Phoenix.[2]   Chlorinated solvent use and waste management practices of these facilities are responsible for widespread VOC contamination of soil and groundwater in the region encompassing the WVBA Site,

---

[2]     Major production and use of chlorinated organic solvents such as PCE and TCE began throughout the country in the 1950s and 60s. Extensive and widespread industrial usage of these compounds continued until human health and environmental concerns led to a decline in production and usage of PCE and TCE.

COHEN DOWD QUIGLEY

the WCP Area sites and the M-52 Superfund Site. Prior to the 1980s, many of these facilities developed on-site waste disposal systems consisting of evaporation ponds, septic systems and leach fields, cesspools, drywells, and other types of wastewater facilities that discharged waste directly to permeable subsurface sediments for disposal.

54. Releases of solvents in chemical products and wastes containing VOCs as a result of spills, leaks, discharges, and waste disposal practices provide a direct mechanism for vertical contaminant transport through the unsaturated zone to groundwater. Any hydrologic condition that shortens residence time within the unsaturated zone increases the amount of VOC Contaminants entering groundwater. According to the WVBA RI Report, the overall coarse-grained nature of the unsaturated zone in the WVBA Site is not conducive to the retention of VOC Contaminants released to the subsurface and will favor more rapid transport through the unsaturated zone and increase the likelihood of VOC Contaminants reaching groundwater. Similar subsurface conditions are observed throughout the Salt River basin in the region encompassing the comingled contaminant plume. Furthermore, groundwater levels vary over time and have been significantly higher in past decades when historic releases occurred, resulting in a more direct and rapid pathway for contaminant transport to groundwater.

55. According to the WVBA RI Report, once VOCs are released to the soil, unsaturated flow is "primarily downward until either a change in lithology or the groundwater table is encountered. As a result of this primarily vertically downward migration, unsaturated flow occurs at or near the source area. As vadose zone soils within the WVBA are generally permeable, unsaturated flow in the WVBA typically continues to the groundwater table." In fact, according to the WVBA RI Report, the VOC Contaminants "in general will migrate through the vadose zone at a greater rate than water."

56. The physical and chemical properties of chlorinated solvents such as PCE and TCE make these chemicals particularly likely causes of groundwater contamination. PCE and TCE releases as a non-aqueous phase liquid will move downward through unsaturated soils relatively rapidly, particularly in comparison to infiltrating groundwater, due to the low

COHEN DOWD QUIGLEY

13

viscosity and interfacial tension of the VOC Contaminants.  These properties allow liquid chlorinated solvents to easily enter into porous media, facilitating deep penetration into the subsurface.  The fact that chlorinated solvents do not readily biodegrade or partition to soil materials means the VOC Contaminants are not significantly retarded or removed during transport through the unsaturated zone.

57.    As stated in the WVBA RI Report, upon reaching the groundwater table as unsaturated flow, the VOC Contaminants dissolve into the uppermost aquifer where groundwater movement within the region is predominantly controlled by RID well pumping. The commingled plumes of contaminated groundwater underlying the M-52 Site and the WCP Area sites flow toward and enter the WVBA Site in response to pumping of RID's groundwater wells in this Area.  The contaminated groundwater in all three areas is hydrologically connected to the groundwater pumped by RID.  For this reason, as the WVBA RI Report acknowledges, "[g]roundwater pumpage represents the major outflow from the groundwater system within the WVBA"

58.    The WVBA WQARF Site and the adjacent WCP Area sites and M-52 Superfund Site are thus impacted by multiple, recalcitrant VOC Contaminants in a heterogeneous hydrogeologic setting in what is collectively one of the largest contaminant plumes in the country.  Based on their chemical and physical properties, PCE and TCE releases to groundwater cause severe and persistent contamination because of their complex contaminant distribution and behavior in the subsurface.  Historical releases of these hazardous substances to soil and groundwater in the WVBA WQARF Site, WCP Area WQARF sites, and M-52 Superfund Site have and will continue to impact RID wells for the foreseeable future.

59.    Contaminated groundwater from the M-52 Superfund Site and WVBA and WCP Area WQARF sites has impacted more than 20 RID groundwater wells. Contaminated groundwater also threatens to impact a number of additional RID groundwater wells that are located along the southern and western plume margins. This contamination restricts RID's ability to utilize its developed groundwater resources for their reasonably foreseeable use as a

COHEN DOWD QUIGLEY

1  municipal water supply.

2  60. Reports issued by ADEQ and the EPA identify numerous current and former

3  owners and operators of facilities within the WVBA Site, M-52 Site, and WCP Area sites

4  from which VOC Contaminants were released into the commingled plumes of contaminated

5  groundwater that has impacted and threatens to impact RID's groundwater wells.

6  61. The WVBA RI Report identifies the following Defendants as current or

7  former owners or operators of facilities that released VOC Contaminants into the

8  groundwater of the WVBA or that owned or operated facilities that released Contaminants

9  under conditions evidencing that VOC Contaminants were released into the groundwater of

10  the WVBA:

11  • Alcoa/Reynolds

12  • Air Liquide America Specialty Gasses LLC

13  • American Linen Supply Company

14  • ChemResearch Co., Inc.

15  • Dolphin, Incorporated

16  • U.S. Department of Energy

17  • Maricopa County Materials Management

18  • Prudential Overall Supply

19  • Van Waters & Rogers, Inc. (now Univar USA, Inc.)

20  • Union Pacific Railroad

21  • Romic Environmental Technologies

22  • Union Oil

23  • Kinder Morgan

24  62. In other regulatory reports referenced below, the following Defendants are

25  identified as current or former owners or operators of facilities that released VOC

26  Contaminants into the groundwater of the M-52 Superfund Site, which comingled and

27  flowed into the groundwater of the WVBA:

28  • Honeywell International, Inc.

COHEN DOWD QUIGLEY

1  • City of Phoenix

2  • Milum Textile Services Co.

3  • ITT Corporation

4  • Meritor, Inc.

5  • Arizona Public Service Company

6  • Union Pacific Railroad Company

7  • Walker Power Systems, Inc.

8  • Motorola, Inc. (now Freescale)

9  • SRP

10  63. Within the WCP Area, the ADEQ Remedial Investigation Report of the West Osborn Complex ("WOC RI Report") identifies the following Defendants as current or former owners or operators of facilities that released VOC Contaminants into the groundwater of the WOC, which comingled and flowed into the groundwater of the WVBA:

14  • Corning, Incorporated

15  • NUCOR Corporation

16  • United Industrial Corporation (a subsidiary of Textron, Inc.)

17  64. In other regulatory reports referenced below, the following Defendant is the current or former owner or operator of a facility that released VOC Contaminants into the groundwater of the East Grand Avenue Area ("EGA") , which comingled and flowed into the groundwater of the WVBA:

21  • Van Waters & Rogers, Inc. (now Univar USA, Inc.)

**RID's Actions to Respond to the Contamination**

23  65. Under Arizona law, "[ADEQ] or any person may perform an early response action if the action is initiated prior to selection of a remedy at a site under ARIZ. ADMIN. CODE ("A.A.C.") § R18-16-410 and is necessary to: (1) address current risk to public health, welfare and the environment; (2) protect or provide a supply of water; (3) address sources of contamination; or (4) control or contain contamination where such actions are expected to reduce the scope or cost of the remedy needed at the site." A.A.C. § R18-16-405(A).

COHEN DOWD QUIGLEY

66.     According to the ADEQ RI Report, one of the remedial objectives for the WVBA WQARF Site is to "protect, restore, replace or otherwise provide a water supply for municipal use by currently and reasonably foreseeable future municipal well owners within the WVBA WQARF Site if the current and reasonably foreseeable future uses are impaired or lost due to contamination from the site."

67.     To respond to the contamination and threatened contamination of its wells from the M-52, WVBA and WCP Sites, RID voluntarily entered into an Agreement to Conduct Work, dated October 8, 2009, between ADEQ and RID ("Agreement to Conduct Work") to conduct (a) an Early Response Action ("ERA") to address certain RID groundwater wells and (b) a Feasibility Study for the WVBA WQARF Site.   The Agreement to Conduct Work acknowledges that the "ADEQ has determined that releases or threatened releases of hazardous substances have occurred . . . resulting in groundwater contamination that has impacted multiple RID water supply wells which may present an imminent and substantial endangerment to the public health, welfare or the environment within the [WVBA] WQARF Site."

68.     Pursuant to the Agreement to Conduct Work with ADEQ, G&K, on behalf of RID, hired consultants to investigate, monitor, assess and evaluate the groundwater contamination and its sources and to design an ERA, in accordance with state law, with the objective of removing VOC Contaminants that are impacting the most highly contaminated groundwater wells in the WVBA WQARF Site.

69.     RID submitted an ERA Work Plan to ADEQ for its review and approval on October 5, 2009, prior to any selection of a remedy under A.A.C. § R18-16-410.

70.     The ERA is authorized under A.A.C. § R18-16-405, as it will protect and provide a water supply by providing treatment at the most highly contaminated RID wells to remove VOCs that are contaminants of concern in regional groundwater at the WVBA Site that is protective of all RID current and reasonably foreseeable end uses.  The ERA also addresses current and future risks to public health, welfare, and the environment by mitigating the uncontrolled release of contaminants that are known to volatilize when

COHEN DOWD QUIGLEY

pumped from these highly contaminated wells.

71.     The ERA is "necessary" not only because more than 20 RID groundwater wells are currently impacted, but because additional RID wells are "threatened" by VOC contamination, as defined in Arizona law.   Arizona law provides that "in considering whether an early response action is necessary to protect or provide a supply of water because a well is threatened by contamination, a well located in the area within one-fourth mile upgradient, one-half mile cross-gradient and one mile downgradient of the areal extent of contamination at the site shall be presumed to be threatened by the contamination."  A.A.C. § R18-16-405(I).

72.     ADEQ and its technical consultants provided technical comments on the ERA to RID on December 23, 2009.

73.     To address ADEQ's comments, RID submitted a revised ERA Work Plan to ADEQ on February 4, 2010.

74.     Several Defendants and other PRPs provided comments to ADEQ on both the initial and revised ERA Work Plan and objected to ADEQ's approval of the ERA Work Plan.

75.     Pursuant to the Agreement to Conduct Work with ADEQ and A.A.C. § R18-16-405, the Director of ADEQ is required to approve the ERA if it meets all of the remedial action criteria of A.R.S. § 49-282.06(A), which provide that the ERA must protect public health, allow maximum beneficial use of state waters, and be reasonable, necessary, cost effective and technically feasible.

76.     The ERA met these criteria, and the Director of ADEQ approved the ERA Work Plan on June 24, 2010.

77.     Pursuant to the Agreement to Conduct Work with ADEQ and ADEQ's approved ERA, RID has incurred and continues to incur response costs that are necessary and consistent with the NCP to implement the ERA and to address the contaminated groundwater that has impacted or threatens to impact RID's wells.

78.     On September 2, 2011, ADEQ approved a voluntary RID proposal for

COHEN DOWD QUIGLEY

development and implementation of a wellhead treatment systems pilot initiative, the "RID-95 Wellhead Pilot Treatment System Proposal". This initiative was to pump and treat contaminated groundwater from four of the most highly contaminated RID wells identified in the approved ERA in order to: (a) evaluate the effectiveness of liquid-phase granular activated carbon treatment technology in removing the mixture of VOCs present in the WVBA, (b) evaluate two types of liquid-phase granular activated carbon treatment for effectiveness and efficiency, (c) evaluate the feasibility and constraints of wellhead treatment in lieu of more expensive centralized treatment, and (d) refine the capital and operation & maintenance  cost estimates with the ultimate intention of reducing ERA response costs. RID has incurred and continues to incur response costs consistent with the NCP to implement, operate, and maintain the agreed upon four wellhead treatment systems.

79. As a result of technical discussions with ADEQ, information developed during the implementation of the ADEQ-approved ERA Work Plan, and data obtained from testing under the wellhead treatment systems pilot initiative, RID submitted a proposal to ADEQ to modify the ADEQ-approved ERA Work Plan on July 17, 2012 and a Work Plan for implementation of the Modified ERA ("the Modified ERA") on January 24, 2013. Similar to the original ERA, the Modified ERA meets all applicable requirements established by state law and is necessary to protect RID's supply of water and address current and future risks to public health, welfare, and the environment.

80. ADEQ analyzed the proposed modifications to the original ERA Work Plan to assure it meets the objectives of an ERA and to determine compliance with applicable State statutes and rules. The Modified ERA reduces the capital and operation and maintenance costs of the ERA for the WVBA WQARF Site by as much as fifty percent and was approved by ADEQ on February 1, 2013, following the public review process.

81. Consistent with the ADEQ authorized actions associated with the RID-95 Wellhead Pilot Treatment System Proposal and Modified ERA Work Plan, RID installed liquid-phase granular activated carbon treatment systems at the four most highly contaminated RID wells in the WVBA WQARF Site and initiated groundwater remediation

activities in 2012.  The RID wells equipped with wellhead treatment are designated as RID wells 89, 92, 95, and 114.  RID response actions have resulted in removal of over 3,000 pounds of VOC contaminants through the extraction and treatment of over seven billion gallons of contaminated groundwater.  Plaintiffs, on behalf of G&K and RID, have incurred and continue to incur response costs consistent with the NCP to implement the ADEQ-approved Modified ERA and address the contaminated groundwater that violates applicable aquifer water quality standards for the reasonably foreseeable use of this water as a drinking water source and has impacted and threatens to impact RID's groundwater supply wells at levels above those allowing for unlimited use and unrestricted exposure.

82.     Spinnaker provided funding for the design, construction, and operation and maintenance of the RID wellhead groundwater treatment systems, except as noted below. Additionally, Plaintiffs have jointly provided professional engineering services and operational support through all phases of the planning, design, construction and operation and maintenance of the four RID wellhead groundwater treatment systems.  Over $7 million in necessary response costs associated with the funding and construction and on-going operation and maintenance of the RID wellhead groundwater treatment systems have been incurred by Plaintiffs to date, not including accrued interest.

83.     ADEQ, through WQARF funding, has reimbursed RID for a limited portion of the incurred costs associated with operation and maintenance of the RID wellhead groundwater treatment systems.  ADEQ has submitted three annual payments of WQARF funds to RID to reimburse RID for costs that the agency deemed were in support of the work that RID performed at the WVBA WQARF Site in response to contamination that has impacted RID's well field.   Specifically, in a letter disbursing the initial WQARF reimbursement to RID, ADEQ determined that: (1) the remedial costs were reasonable, necessary and cost-effective; (2) actions were taken in response to a release or threat of a release of a hazardous substance or pollutant and that release or threat of release presents an imminent and substantial endangerment to the public health or environment; and (3) RID has taken all reasonable efforts to obtain reimbursement from responsible parties and the

COHEN DOWD QUIGLEY

1   federal government.

2   84.   Upon receipt of ADEQ WQARF funds, RID subsequently disbursed an

3   equivalent dollar amount to G&K that was placed in a trust account ("the G&K Trust")

4   established to fund the RID groundwater response action.[3]  In order to sustain the response

5   action, G&K subsequently submitted payments from the G&K Trust to Plaintiffs to pay a

6   portion of the costs incurred by Plaintiffs for operation of the RID wellhead treatment

7   systems.  Although payments provided by ADEQ to RID were used as partial payment of

8   the operating costs of the RID wellhead groundwater treatment systems, RID has an

9   obligation to recover and reimburse ADEQ for the WQARF funds received.

10   85.   Pursuant to the ADEQ-approved ERA, ADEQ certified the Operation and

11   Maintenance Plan ("O&M") to implement the ADEQ-approved Modified ERA on April 10,

12   2015.  The O&M Plan has been revised and approved by ADEQ to include the selected

13   response action in the ADEQ-approved FS Report.

14   86.   Pursuant to the Agreement to Conduct Work with ADEQ and the ADEQ-

15   approved ERA and Modified ERA, Plaintiffs, on behalf of G&K and RID, also took

16   response actions to develop and implement a FS Report for the WVBA WQARF Site to

17   address groundwater contamination that violates applicable aquifer water quality standards

18   and to address all RID wells impacted or threatened to be impacted above their reasonably

19   foreseeable drinking water supply end use by groundwater contamination in the WVBA

20   WQARF Site as required under state law.  ADEQ analyzed the FS Work Plan and FS Report

21   submitted to ADEQ to assure both complied with applicable Arizona statutes and rules.

22   After a public comment process in which Plaintiffs were involved, ADEQ approved the FS

23   Work Plan on July 16, 2013 and the FS Report on April 13, 2015.

24   87.   Upon ADEQ's approval of RID's FS Work Plan and FS Report, Plaintiffs, on

25   behalf of G&K and RID, have incurred, and continue to incur, costs consistent with the

26   NCP to implement the ADEQ-approved FS Work Plan and FS Report and respond to the

27

28   [3]   RID has also contributed the monies it has received from the proceeds of settlements with certain potentially responsible parties into the G&K Trust Account.

COHEN DOWD QUIGLEY

21

contaminated groundwater that violates applicable aquifer water quality standards and has impacted and threatens to impact RID's groundwater supply wells above their reasonably foreseeable drinking water end use.

## OVERVIEW OF SECTION 107 LIABILITY UNDER CERCLA

88.    To prevail on a CERCLA Section 107 cost-recovery claim, a plaintiff need only show the following four elements to designate each defendant as a potentially responsible party ("PRP"), who is jointly and severally liable under CERCLA for all necessary response costs incurred in substantial compliance with the applicable provisions of the NCP:

(1)    the defendant is a current or former owner and/or operator of a facility;

(2)    the defendant's site is a "facility" as defined in CERCLA;

(3)    there has been a release or a "threatened release" of hazardous substances at or from the defendant's facility; and,

(4)    the plaintiff(s) have incurred necessary costs in responding to the release or threatened release that are consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. pt. 300 (the "NCP").

89.    Under CERCLA, a release is defined as "any spilling, leaking, pouring, emitting, emptying discharging, injecting dumping, or disposing into the environment." The term "release" is construed broadly to include the mere presence of hazardous substances in soil or groundwater.  The presence of hazardous substances in soil and groundwater and the past, present or potential migration of hazardous substances constitute actual and/or threatened releases pursuant to CERCLA.

90.    Under CERCLA, substantial compliance with the NCP has been construed broadly to include a response action that "results in a CERCLA-quality cleanup" or that is consistent with a government-approved work plan or conducted under government oversight.

91.    Each of the Defendants is a PRP because: (1) each of them is a current or former owner and/or operator of a facility as defined in CERCLA; (2) hazardous substances

1   have been released at each of their facilities; and (3) as alleged above, Plaintiffs, on behalf of

2   G&K and RID, have incurred necessary costs in responding to the releases that are

3   consistent with the NCP.

**ALLEGATIONS AS TO SPECIFIC DEFENDANTS**

**The WVBA Defendants**

6   92.   As alleged above, the WVBA RI Report expressly identifies the following

7   Defendants described below as "Contaminant Sources" for the groundwater contamination

8   within the WVBA Site.  Accordingly, each of them is a PRP that is jointly and severally liable

9   to Plaintiffs under § 107 of CERCLA.

***Alcoa and Reynolds***

11   93.   Alcoa and/or Reynolds owns and/or owned an aluminum extrusion facility

12   on 320 acres between 35th Avenue and 43rd Avenue, and between Van Buren and the Union

13   Pacific Railroad tracks. The facility was constructed prior to 1946 under authority of the U.S.

14   Government Defense Plant Corporation.  The facility was originally operated by Alcoa.

15   Reynolds took operational control in 1946 and remained in control until production stopped

16   in 1983.  Alcoa acquired Reynolds as a wholly-owned subsidiary in 2000.

17   94.   According to the WVBA RI Report, two different degreasing processes were

18   used in the plant: Stoddard solvent and vapor recovery.  The Stoddard solvent system was

19   operated from the construction date until the early 1970s.  The vapor recovery degreasing

20   unit was installed in the early 1970s as a replacement for the Stoddard solvent degreasing

21   process and was used until closure of the plant in 1983.  Large quantities of solvents such as

22   TCA and Stoddard solvent were used in the manufacturing operations.

23   95.   Because of groundwater contamination detected in WVBA monitor wells,

24   Reynolds conducted a series of soil and groundwater investigations beginning in 1988 to

25   characterize the occurrence and extent of VOC releases on its property.

26   96.   According to the WVBA RI Report, the Reynolds facility is one of the nine

27   most significant contaminant sources in the WVBA Site.  PCE, TCE, and TCA were

28   detected in both soil and soil gas samples obtained beneath the Reynolds property.  The

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

1   highest VOC concentrations in soil gas were detected at 20 to 40 feet below ground surface

2   in the vicinity of the Stoddard solvent dip tank.

3        97.    Concurrent with the soil investigations, groundwater was investigated through

4   the installation, monitoring, and sampling of groundwater monitor wells.  PCE, TCE, TCA,

5   1,1-DCE and 1,1-DCA were detected in groundwater samples collected from the monitor

6   wells.  The highest concentrations of TCA and 1,1-DCE were detected in groundwater

7   samples collected from the wells located adjacent to the east Stoddard dip tank and the

8   solvent still area.  According to the WVBA RI Report, "[s]oil and groundwater data indicated

9   that TCA releases at the Reynolds facility migrated vertically to UAU1 [groundwater]" and

10  other VOC Contaminants were detected in groundwater beneath the Reynolds facility.  The

11  report concluded that PCE and TCA, and possibly TCE, has or may have contaminated

12  groundwater underlying the site.  Other VOCs present in groundwater such as 1,1-DCE and

13  1,1-DCA are believed to be caused by the degradation of TCA and possibly TCE and PCE.

14       98.    The VOCs released at the Alcoa/Reynolds facility are the same VOCs that are

15  WVBA contaminants of concern for which Plaintiffs have incurred response costs,

16  consistent with the NCP, to implement the ERA and address the VOC contaminated

17  groundwater that has impacted or threatens to impact RID's wells.

18       99.    Based on public records, Alcoa and/or Reynolds is the (1) current or former

19  owner or operator of (2) a facility where there has been (3) a release or threatened release of

20  a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

21  substances consistent with the NCP.

22                ***Air Liquide***

23       100.    Air Liquide is an international industrial group headquartered in Paris, France

24  specializing in industrial and medical gases manufacturing and repackaging.  Air Liquide

25  owns and/or operates a 9.9-acre facility located at 301 S. 45th Avenue in Phoenix, Arizona

26  within the WVBA Site.  The first industrial operations at the Air Liquide America Specialty

27  Gases (ALASG) facility in Phoenix occurred in approximately 1963 when Dye Oxygen

28  Company began industrial gas manufacturing.  In 1973, Liquide Air Corporation purchased

24

the stock of Dye Oxygen Company.

101.    The ALASG site contains three primary buildings: the fill plant, the acetylene plant and the former air separator unit.  According to the WVBA RI Report, ALASG used solvents such as TCA at the air stripper unit to clean compressors, valves, and other equipment for oxygen service from 1973 to 1996.

102.    Because of VOCs detected in groundwater monitor wells downgradient of the ALASG facility, ADEQ requested that Air Liquide conduct an investigation at its facility to fully characterize the releases.

103.    According to the WVBA RI Report, the ALASG facility is identified as one of the nine most significant contaminant sources in the WVBA Site.  Several areas have been investigated at the ALASG facility.  One of these areas, the grease trap and associated conduits within the former air stripper unit, has had a release of contaminants.  PCE, TCE, TCA, and 1,1-DCE have been detected in both soil samples and soil gas samples obtained beneath the facility.  The highest concentrations were detected beneath the building that contained the former air stripping unit located adjacent to the eastern boundary of the facility.

104.    The WVBA RI Report indicates VOC concentrations extend to significant depths below the building housing the air stripping unit and are found in coarse-grained UAU sediments that are in direct hydraulic communication with the underlying contaminated groundwater system.  PCE and TCE were detected at concentrations greater than AWQS in groundwater samples collected from the on-site monitor wells.

105.    The VOCs released at the ALASG facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

106.    Based on public records, Air Liquide is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

COHEN DOWD QUIGLEY

1   substances consistent with the NCP.

2                                  ***American Linen***

3          107.    According to the WVBA RI Report, American Linen owns and/or operates

4   an approximate 1.5-acre facility at 702 West Buchanan Street in Phoenix, Arizona, located

5   within the WVBA Site.

6          108.    American Linen is a dry cleaner/laundry facility that used PCE from 1956 to

7   1984 within a 31,000 square foot laundry processing building located at the site.  The facility

8   was operated as a Maroney's Cleaners & Laundry, Inc., from approximately 1969 to October

9   1979.  American Linen purchased the property in 1979 and presently owns and operates the

10  facility.  American Linen stopped dry cleaning operations in 1995, converted to a water wash

11  system, and operated the two dry cleaners occasionally until 1992.

12         109.    Because of groundwater contamination detected in WVBA monitor wells,

13  ADEQ requested that American Linen conduct soil and groundwater investigations to

14  characterize the occurrence and extent of VOC releases on its property.

15         110.    American Linen conducted a series of soil and groundwater investigations

16  beginning in 1992.  According to the WVBA RI Report, the American Linen facility is one

17  of the nine most significant contaminant sources in the WVBA Site.  PCE and TCE were

18  detected in both soil gas and soil samples across the facility.  The highest concentrations of

19  PCE were detected in samples collected beneath the west-central portion of the property.

20         111.    Concurrent with the soil investigations, groundwater was investigated through

21  the installation, monitoring, and sampling of groundwater monitor wells.  PCE, TCE, cis-

22  1,2-DCE and trans-1,2-DCE were detected in groundwater samples collected from the

23  monitor wells.  According to the RI Report, the presence of TCE and DCE compounds may

24  be due to the degradation of PCE or the release of the contaminant.

25         112.    According to the WVBA RI Report, soil and groundwater data from the site

26  investigations indicate PCE and TCE present in the soils beneath the American Linen

27  facility migrated vertically and contaminated the underlying groundwater.

28         113.    American Linen settled ADEQ environmental claims in 1997 and ADEQ

                                              26

COHEN DOWD QUIGLEY

performed an ERA at the facility in 1999. The ERA consisted of soil vapor extraction, groundwater extraction, and air sparging. The SVE system ceased operation in 2002 and the groundwater extraction system shut down in 2003.

114. The VOCs released at the American Linen facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

115. Thus, based on public records, American Linen is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

## ChemResearch

116. According to the WVBA RI Report, ChemResearch owns and/or operates a facility at 1122 West Hilton Avenue in Phoenix, Arizona, located within the WVBA Site.

117. According to the WVBA RI Report, ChemResearch once consisted of four (4) separate properties: a Plating Shop at 1122 West Hilton Avenue, a Warehouse/Laboratory at 1130 West Hilton Avenue, an Administration Building and Grinding Shop at 1101 West Hilton Avenue, and a Paint Shop at 1120 West Watkins Street. ChemResearch is an electroplating, metal finishing, and metal parts plating company. The main plating activities were conducted at the 1122 West Hilton Avenue facility. According to the WVBA RI Report, ChemResearch used PCE in large quantities. A 1988 inspection report documents numerous waste tanks ranging in size from 20 to 10,000 gallons.

118. ChemResearch has conducted chrome plating at the Plating Shop since 1959 and purchased the facility in 1989. Operations at the facility included PCE vapor degreasing, electroplating, anodizing, special processes, and wastewater treatment.

119. The Painting Shop at 1120 West Watkins Street was operated by ChemResearch beginning in 1979. ChemResearch used a portion of this facility for painting, which involved the use of several paint booths and PCE degreasers, and storage of waste

COHEN DOWD QUIGLEY

and flammable liquids.  ChemResearch purchased the facility in 1989.  For a period of time, waste material, including spent PCE was transferred to the facility to await disposal offsite by a waste hauler.

120.    The Administration/Grinding Shop at 1101 West Hilton Avenue was built in 1953 and originally occupied by Standard Printing Company.  In 1973, ChemResearch leased the building and bought the facility in 1983.  At one time painting operations, which included the use of PCE, were conducted at the facility until they were moved to 1120 West Watkins Street in 1979.

121.    Because of groundwater contamination detected in WVBA monitor wells, ADEQ requested that ChemResearch conduct soil and groundwater investigations to characterize the occurrence and extent of VOC releases on its property.

122.    ChemResearch conducted a series of soil and groundwater investigations beginning in 1990.  According to the WVBA RI Report, the American Linen facility is one of the nine most significant contaminant sources in the WVBA Site.  PCE, TCE, and 1,1-DCE were present in soil gas samples and PCE and 1,1-DCE were found in soils samples from beneath the ChemResearch facilities.

123.    Concurrent with the soil investigations, groundwater was investigated through the installation, monitoring, and sampling of groundwater monitor wells.  PCE, TCE, cis-1,2-DCE and trans-1,2-DCE were detected in groundwater samples collected from the monitor wells.

124.    According to the WVBA RI Report, chromium and PCE have been released into the environment from this facility.  PCE appeared to have been released to soil at two locations, the first at the former hazardous materials storage area and adjacent drum storage area, and the second at the former PCE vapor degreasing area.  Based on the results of soil and groundwater investigations, ADEQ determined that PCE released to soil has migrated vertically and contaminated underlying groundwater contamination.

125.    The VOCs released at the ChemResearch facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with

28

the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

126.    Thus, based on public records, ChemResearch is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### *Dolphin*

127.    According to the WVBA RI Report, Dolphin owns and/or operates an approximately 50-acre facility located at 740 South 59th Avenue in Phoenix, Arizona within the WVBA Site.

128.    Dolphin is a precision metal casting facility, which produces aviation components and custom golf club heads.  The property was first developed in 1968 by Rueter, Inc. as an investment casting operation.  Dolphin bought the property in 1972 and continued casting operations.  Additional property purchased in 1984 and 1988 expanded the facility to its current size of 50 acres.  The facility operated 24 hours a day and contains 19 buildings.

129.    As described in the 2007 Letter Report explaining the Operational History of the Dolphin, Inc. Facility prepared by HydroGeoLogic, Inc. ("the Operational History Letter Report"), PCE has been used since the initial portion of the facility was developed in 1968 and discontinued in 1994.  PCE was used to degrease casting molds.  Facility records indicate that from 1982 to 1989 the PCE degreaser was located on the west side of Dolphin I property and situated on an unbermed concrete surface.  Other suspected sources of contamination are associated with chemical and waste storage areas, leaking facility drains and sewer lines, and septic tanks and leach fields used for waste disposal.

130.    According to the WVBA RI Report, the Dolphin property is one of nine most significant contaminant sources in the WVBA Site.  Documented releases of PCE at the Dolphin facility occurred from a discharge pipe into a drainage area in 1988 and from a release of approximately 500 gallons of liquid and sludge material containing PCE, TCE,

COHEN DOWD QUIGLEY

1   DCE and TCA that occurred at Dolphin III production facility in 1992.

2   131.   Dolphin conducted a series of soil and groundwater investigations to

3   document the extent and magnitude of VOC releases at the property.  The WVBA RI

4   Report indicates PCE, TCE, 1,1-DCE, 1,2-DCE, and TCA are present in both soil and soil

5   gas samples obtained at the Dolphin facility associated with plant drains and sewer pipes,

6   chemical storage areas, the PCE degreaser, the buried interceptor/septic tank, and a drywell.

7   The presence of TCE and DCE compounds in subsurface soils is attributed to the

8   degradation of PCE and TCA.  PCE concentrations extend to significant depths below

9   certain source areas and penetrate coarse-grained sediments that are in direct hydrologic

10  communication with the underlying shallow groundwater system.

11  132.   Groundwater investigations were conducted concurrent with the soils

12  investigations at the Dolphin facility.  VOCs have been detected in groundwater samples

13  collected from the on-site monitor wells with PCE, TCE, and 1,1-DCE having

14  concentrations greater than their respective AWQS. According to the WVBA RI Report,

15  "[g]roundwater data… indicate that the release of PCE occurring at the Dolphin facility

16  contaminated groundwater beneath the facility and migrated downgradient of the facility."

17  133.   The VOCs released at the Dolphin Incorporated facility are the same WVBA

18  Site contaminants of concern for which Plaintiffs have incurred response costs, consistent

19  with the NCP, to implement the ERA and address the VOC contaminated groundwater that

20  has impacted or threatens to impact RID's wells.

21  134.   Thus, based on public reports, Dolphin Incorporated is the (1) current or

22  former owner or operator of (2) a facility where there has been (3) a release or threatened

23  release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the

24  hazardous substance consistent with the NCP.

25                            *Department of Energy*

26  135.   The United States Department of Energy owns and/or operates a facility

27  located at 615 South 43rd Avenue in Phoenix, Arizona, known as the Western Area Power

28  Administration (WAPA), within the WVBA Site.  The WAPA site consists of approximately

COHEN DOWD QUIGLEY

32 acres.  The facility was originally constructed in 1951 by the Bureau of Reclamation. WAPA took over operation of the facility in 1980 with the Bureau of Reclamation still occupying the northwest corner of the property.  WAPA is involved in wholesale power marketing and distribution.

136.    According to the PHASE I SOIL VAPOR SURVEY WORK PLAN (October 8, 2004) ("Phase I Soil Vapor Work Plan") for the WAPA, the complex contains numerous buildings for conducting various activities including equipment and vehicle maintenance, overhaul and repair of electrical equipment, painting, storage, administrative duties, and a fueling system for facility vehicles.  Five drywells have been abandoned at the site.  Three of the drywells were reportedly part of a former maintenance building drainage and septic system.  Six drywells are currently located at the facility.  Various wastes and solvents have been stored and used at the facility including RCRA and Toxic Substances Control Act Wastes, waste dielectric fluids containing PCBs, petroleum solvents, chlorinated solvents, pesticides, waste solvents, and fuels.

137.    Because of VOCs detected in soils and in groundwater at the facility, ADEQ requested that WAPA conduct a soils investigation as well as additional groundwater investigations at the facility to fully characterize the releases.

138.    According to the WVBA RI Report, the WAPA facility is identified as one of the nine most significant contaminant sources in the WVBA Site.  PCE, TCE, 1,1-DCE and cis-1,2-DCE were detected in soil gas and PCE and TCA were present in soil samples obtained in the limited site investigation work conducted at the WAPA facility.  In May 2003, two drywells were sampled at the site.  The southern drywell contained 1, 1-DCE.

139.    Limited groundwater investigation has been conducted at the WAPA facility. PCE, TCE, cis-1, 2-DCE and chloroform were detected in groundwater underlying the WAPA facility.  PCE and TCE were detected at concentrations greater that AWQS in groundwater collected from the on-site irrigation well and monitoring well MW-1.

140.    The VOCs released at the United States Department of Energy WAPA facility are the same VOCs that are WVBA Site contaminants of concern for which Plaintiffs have

COHEN DOWD QUIGLEY

1   incurred response costs, consistent with the NCP, to implement the ERA and address the

2   VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

3        141.   Thus, based on public records, the United States Department of Energy is the

4   (1) current or former owner or operator of (2) a facility where there has been (3) a release or

5   threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to

6   address the hazardous substances consistent with the NCP.

7                                *Maricopa County*

8        142.   According to the WVBA RI Report, Maricopa County owns and/or operates

9   an approximately four-acre facility located at 320 West Lincoln Street in Phoenix, Arizona.

10  The property was formerly owned by Union Pacific Railroad or its predecessor, Southern

11  Pacific Transportation Company, and leased to Southwest Solvents.  In 1964, Southwest

12  Solvents located its solvent reclaiming operation to the northwest portion of the site and

13  operated there until its lease was terminated in 1974.  Southwest Solvents received spent

14  solvent from local industrial facilities to be reclaimed.  Spent solvents reclaimed on-site

15  included PCE, TCE, TCA, and Freon. PCE came primarily from dry cleaning sludge and

16  TCE from industrial customers who used the solvent to clean metal parts.  The spent

17  solvents were stored in 55-gallon metal drums.

18       143.   Maricopa County purchased the property in 1974 and constructed a

19  warehouse.  The warehouse housed a printing operation for Maricopa County Materials

20  Management (MCMM) involving the use of multi-graphic blankwash cleaning solutions and

21  SafetyKleen cleaning solution, both containing PCE.

22       144.   According to the WVBA RI Report, the Maricopa County property is one of

23  the nine most significant contaminant sources in the WVBA Site.  Investigations into the

24  facility were initiated by ADEQ in 1992 in response to groundwater contamination detected

25  in a monitoring well downgradient of the facility.  A soil gas survey conducted at the site by

26  Maricopa County in June 1992 detected PCE, TCE, TCA, 1,1-DCE, cis & trans-1,2-DCE,

27  and 1,1-DCA in the soil vapor collected from beneath the western portion of the facility.

28  PCE and TCE were the most commonly detected VOCs and these soil vapor concentrations

COHEN DOWD QUIGLEY

32

1   were detected in the vicinity of the former Southwest Solvent Reclamation facility.

2       145.    Three groundwater-monitoring wells were installed on the site and numerous

3   rounds of groundwater sampling have been conducted at the facility since the well

4   installations.  VOCs detected in groundwater samples collected from these wells included

5   PCE, TCE, 1,1-DCE, 1,2-DCA, and cis-1,2-DCE.  PCE and TCE were the most commonly

6   detected VOC and the highest concentrations occurred in the vicinity of the former

7   Southwest Solvent recycling facility in the northwest portion of the property and the middle

8   of the southeast parking lot. According to the WVBA RI Report, "[g]roundwater and soil

9   data collected from the MCMM facility indicate that a TCE release to the vadose zone and

10  UAU1 [groundwater] occurred at the MCMM facility."  In addition, ADEQ observed that

11  "it appears that a release of 1,2-DCA from the MCMM facility affected groundwater quality

12  beneath the facility."

13      146.    The VOCs released at the Maricopa County facilities are the same WVBA Site

14  contaminants of concern for which Plaintiffs have incurred response costs, consistent with

15  the NCP, to implement the ERA and address the VOC contaminated groundwater that has

16  impacted or threatens to impact RID's wells.

17      147.    Thus, based on public records, Maricopa County is the (1) current or former

18  owner or operator of (2) a facility where there has been (3) a release or threatened release of

19  a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

20  substances consistent with the NCP.

21                                    ***Prudential Overall Supply***

22      148.    According to the WVBA RI Report, Prudential Overall Supply owns and/or

23  operates a facility located at 5102 West Roosevelt Street in Phoenix, Arizona from which

24  there has been a release or threatened release of a hazardous substance.

25      149.    The facility is an industrial laundry and dry cleaning operation.  Prudential

26  Overall Supply has owned the property since December 1980, and the first industrial

27  operations at the facility occurred in approximately 1982 when laundry and dry cleaning

28  operations began.  The bulk of the facility's operations have consisted of laundering and

COHEN DOWD QUIGLEY

pressing uniforms, overalls, and shop towels from 1982 through the present. Dry cleaning operations began at the site in 1982 and were terminated in 1991. PCE was used as the dry cleaning solvent during the operations, and was contained in a 750-gallon capacity internal tank housed in the dry cleaning machine. Prudential Overall Supply indicated PCE was recycled in the dry cleaning machine to minimize waste PCE. Approximately 4,800 gallons of PCE were used per year. Drums containing PCE sludge were stored in the dry cleaning room until manifested and disposed of off-site. Additionally, "Safety-Clean," a solvent containing PCE, was used in a small-parts washer located in the automotive garage. Three drywells were located on site to drain storm water from the paved areas of the facility, but in 1995 the drywells were closed and converted to catch basins.

150. Because of groundwater contamination detected in groundwater monitor wells downgradient of the Prudential Overall Supply facility, ADEQ requested that an investigation be conducted at the facility to evaluate whether a release of PCE had occurred, and if so, to identify the extent and nature of the release. Prudential Overall Supply entered into a Consent Order with ADEQ to further investigate soil and groundwater contamination at the site.

151. According to the WVBA RI Report, the Prudential Overall Supply facility is identified as one of the nine most significant contaminant sources in the WVBA Site. Findings from soils investigations reported by AMEC Geomatrix in a July 2008 GORE™ Survey Report for Prudential Overall Supply indicate PCE was used extensively as a solvent for dry cleaning operations and PCE has been detected in both soil and soil gas samples and is present in elevated concentrations beneath a majority of the site. TCE and cis-1,2-DCE are also present in soil gas samples at the facility and may be attributed to degradation of PCE to TCE or that the compounds are impurities in the PCE used at the Prudential Overall Supply facility. According to the WVBA RI Report, "[g]roundwater data… indicate that the releases of PCE occurring at the POS facility contaminated groundwater beneath the facility and migrated downgradient of the facility."

152. The results of publicly available site characterization studies conducted at the

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

1   Prudential Overall Supply facility indicate that PCE concentrations extend to significant

2   depths below areas of suspected PCE releases.  PCE is present in soil and soil gas in deep

3   borings that penetrate coarse-grained alluvial sediments that are in direct hydrologic

4   communication with the underlying shallow groundwater system.   PCE is present in

5   groundwater in the vicinity of the Prudential Overall Supply facility at concentrations

6   exceeding AWQS.

7          153.    The VOCs released at the Prudential Overall Supply facility are the same

8   WVBA Site contaminants of concern for which Plaintiffs have incurred response costs,

9   consistent with the NCP, to implement the ERA and address the VOC contaminated

10  groundwater that has impacted or threatens to impact RID's wells.

11         154.    Thus, based on public records, Prudential Overall Supply is the (1) current or

12  former owner or operator of (2) a facility where there has been (3) a release or threatened

13  release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the

14  hazardous substances consistent with the NCP.

15                                       *Univar*

16         155.    According to the ADEQ Final RI Report, Univar (formerly Van Waters &

17  Rogers, Inc. ("VW&R") owns a solvent recycling and chemical distribution facility located at

18  50 South 45th Avenue that is within the WVBA Site. VW&R merged with United Pacific

19  Corporation in 1966 and became the VWR United Corporation.   The VWR United

20  Corporation changed its name to Univar Corporation in 1974.

21         156.    According to the WVBA RI Report, VW&R developed the chemical

22  distribution facility at 50 South 45th Avenue on nine acres of previously undeveloped

23  farmland beginning in 1971.    Site activities include the warehousing, distributing,

24  repackaging, and transporting of industrial chemicals.   Areas of operation include a

25  wastewater pretreatment system and sewer interceptor, two bulk solvent tank farms, and

26  bulk corrosive tank farm. VW&R formerly operated a Resource Conservation and Recovery

27  Act ("RCRA") interim status container storage unit from 1982 through 1988.   VW&R

28  reported extensive chemical handling and usage of large quantities of TCE and PCE in

product chemicals but indicated that the solvents were only blended and/or repackaged and not consumed or used in any manufacturing process.  VW&R generated large quantities of solvent waste and stored customer generated wastes at its facility.

157.    Because of VOC groundwater contamination detected in the WVBA Site, ADEQ requested that an investigation be conducted at the VW&R facility to evaluate whether a release of VOCs had occurred, and if so, to identify the extent and nature of the release.

158.    According to the WVBA RI Report, the VW&R facility is identified as one of the nine most significant contaminant sources at the WVBA Site.  VW&R began conducting investigations at their facility in 1989.  From 1989 through 1998, VW&R conducted a series of soil and soil gas investigations to characterize site conditions and operated a Soil Vapor Extraction ("SVE") system.  In 1996, a Consent Decree for additional site work was signed by VW&R and ADEQ and terminated an earlier Consent Order.  The 1996 Consent Order stipulated that VW&R conduct additional site investigation, continue groundwater investigation activities and continue SVE operation.

159.    According to the WVBA RI Report, PCE and lesser concentrations of TCE and other chlorinated solvent compounds are present in soil and soil gas in subsurface soils at the VW&R facility.  Soil and groundwater data indicate that the release of PCE and possible other solvent compounds at the VW&R facility has contaminated groundwater beneath the facility and migrated downgradient of the facility.

160.    The VOCs released at the Univar facilities are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.  The WVBA RI Report concluded that "the release of PCE at the VW&R facility contaminated groundwater beneath the facility and migrated downgradient of the facility."

161.    Thus, based on public records, Univar is the (1) current or former owner or operator of (2) multiple facilities where there has been (3) a release or threatened release of a

COHEN DOWD QUIGLEY

1  hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

2  substance consistent with the NCP.

3                                          ***UPRR***

4        162.   UPRR formerly owned and operated a facility located at 320 West Lincoln

5  Street that is in the WVBA Site.  UPRR owned this facility during the time when Southwest

6  Solvents leased a portion of the property and conducted solvent reclamation activities on

7  that property.  In 1964, Southwest Solvents located its solvent reclaiming operation to the

8  northwest portion of the site and operated there until its lease was terminated in 1974.

9  Southwest Solvents received spent solvent from local industrial facilities to be reclaimed.

10  Spent solvents reclaimed on-site included PCE, TCE, TCA, and Freon. PCE came primarily

11  from dry cleaning sludge and TCE from industrial customers who used the solvent to clean

12  metal parts.  The spent solvents were stored in 55-gallon metal drums.

13        163.   According to the WVBA RI Report, the former UPRR property is one of nine

14  most significant contaminant sources in the WVBA Site.  Investigations into the facility were

15  initiated by ADEQ in 1992 in response to groundwater contamination detected in a

16  monitoring well downgradient of the facility.  A soil gas survey conducted at the site in June

17  1992 detected PCE, TCE, TCA, 1,1-DCE, cis & trans-1,2-DCE, and 1,1-DCA in the soil

18  vapor collected from beneath the western portion of the facility.  PCE and TCE were the

19  most commonly detected VOCs and these soil vapor concentrations were detected in the

20  vicinity of the former Southwest Solvent Reclamation facility.

21        164.   Three groundwater monitoring wells were installed on site and numerous

22  rounds of groundwater sampling have been conducted at the facility since the well

23  installations.  VOCs detected in groundwater samples collected from these wells included

24  PCE, TCE, 1,1-DCE, 1,2-DCA, and cis-1,2-DCE.  PCE and TCE were the most commonly

25  detected VOC and the highest concentrations occurred in the vicinity of the former

26  Southwest Solvent recycling facility in the northwest portion of the property and the middle

27  of the southeast parking lot.  According to the WVBA RI Report, soil and groundwater data

28  indicate releases of PCE and TCE at the former UPRR property have contaminated

COHEN DOWD QUIGLEY

1   underlying groundwater.

2       165.    The VOCs released at the former UPRR property located 320 West Lincoln

3   are the same WVBA Site contaminants of concern for which Plaintiffs have has incurred

4   response costs, consistent with the NCP, to implement the ERA and address the VOC

5   contaminated groundwater that has impacted or threatens to impact RID's wells.

6       166.    Thus, based on public records, UPRR is the (1) current or former owner or

7   operator of (2) multiple facilities where there has been (3) a release or threatened release of a

8   hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

9   substances consistent with the NCP.

10                          ***Romic Environmental Technologies***

11      167.    According to the WVBA RI Report, Romic, a successor-in-interest to

12  Southwest Solvents, formerly operated a facility located at 320 West Lincoln Street in

13  Phoenix, Arizona, within the WVBA Site.  Southwest Solvents located its solvent reclaiming

14  operation to the northwest portion of an approximately four-acre parcel owned by Union

15  Pacific Railroad or its predecessor, Southern Pacific Transportation Company, and operated

16  there until its lease was terminated in 1974.  Maricopa County purchased and MCMM

17  assumed ownership of the property in 1974.

18      168.    Southwest Solvents received spent solvent from local industrial facilities to be

19  reclaimed.  Spent solvents reclaimed on-site included PCE, TCE, TCA, and Freon. PCE

20  came primarily from dry cleaning sludge and TCE from industrial customers who used the

21  solvent to clean metal parts.  The spent solvents were stored in 55-gallon metal drums.

22      169.    According to the WVBA RI Report, the property where the former Southwest

23  Solvent reclamation Facility was located is one of nine most significant contaminant sources

24  in the WVBA Site.  Investigations into the contamination impacts at this property were

25  initiated by ADEQ in 1992 in response to groundwater contamination detected in a

26  monitoring well downgradient of the facility.  A soil gas survey conducted at the site by

27  Maricopa County in June 1992 detected PCE, TCE, TCA, 1,1-DCE, cis and trans-1,2-DCE,

28  and 1,1-DCA in the soil vapor collected from beneath the western portion of the facility.

COHEN DOWD QUIGLEY



1   PCE and TCE were the most commonly detected VOCs and these soil vapor concentrations

2   were detected in the vicinity of the former Southwest Solvent reclamation facility.

3        170.   Three groundwater-monitoring wells were installed on the site and numerous

4   rounds of groundwater sampling have been conducted at the facility since the well

5   installations.  VOCs detected in groundwater samples collected from these wells included

6   PCE, TCE, 1,1-DCE, 1,2-DCA, and cis-1,2-DCE.  PCE and TCE were the most commonly

7   detected VOC and the highest concentrations occurred in the vicinity of the former

8   Southwest Solvent reclamation facility in the northwest portion of the property and the

9   middle of the southeast parking lot.  According to the WVBA RI Report, "[g]roundwater

10  and soil data collected from the MCMM facility indicate that a TCE release to the vadose

11  zone and UAU1 [groundwater] occurred at the MCMM facility."  In addition, ADEQ

12  observed that "it appears that a release of 1,2-DCA from the MCMM facility affected

13  groundwater quality beneath the facility."

14       171.   The VOCs released at the former Southwest Solvents reclamation facility are

15  the same WVBA Site contaminants of concern for which Plaintiffs have incurred response

16  costs, consistent with the NCP, to implement the ERA and address the VOC contaminated

17  groundwater that has impacted or threatens to impact RID's wells.

18       172.   Thus, based on public records, Romic Environmental Technologies

19  Corporation is the (1) current or former owner or operator of (2) a facility where there has

20  been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have

21  incurred costs to address the hazardous substances consistent with the NCP.

22                               ***Union Oil***

23       173.   According to the WVBA RI Report, Union Oil owns and/or operates the

24  former Union Oil Company of California ("Unocal") facility located at 10 south 51st Avenue

25  in Phoenix, Arizona, within the WVBA Site.  Union Oil became the successor-in-interest to

26  Unocal following their 2005 acquisition of Unocal Corporation.

27       174.   Union Oil and other companies own, operate, lease or share bulk petroleum

28  product storage and distribution terminals within the Van Buren Tank Farm.  According to

COHEN DOWD QUIGLEY

the WVBA RI Report, the Union Oil facility formerly operated by Unocal was situated on land leased to Santa Fe Pacific Pipelines, L.P., now Kinder Morgan.  Information in the WVBA RI Report indicates that samples obtained from the evaporation pond and process water at the Unocal facility were found to contain PCE, TCE, TCA, 1,1-DCE, cis-1,2-DCE, and 1,1-DCA.

175.    Unocal conducted extensive site investigations of the leased facility following initial discovery of groundwater contamination at the Van Buren Tank Farm in 1985. According to publicly available reports, the presence of 1,2-DCA was documented in subsurface soils from a boring drilled in 1988 and PCE and TCE were detected in subsurface soils from a boring drilled in 1989.  Groundwater underlying the Union Oil facility is also contaminated by PCE, TCE, TCA, chloroform, and methylene chloride.

176.    Based on the existence of detectible levels of VOCs in soil samples, the existence of VOCs in groundwater beneath the Union Oil facility and the low viscosity and high mobility of the VOCs, subsurface lithology and resulting transport mechanisms, the VOCs released at the Union Oil facility threatened or migrated to groundwater beneath the site.

177.    The VOCs released at the Union Oil facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

178.    Thus, based on public records, Union Oil is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### Kinder Morgan

179.    According to the WVBA RI Report, Kinder Morgan owns property within the WVBA Site located at 10 south 51st Avenue in Phoenix, Arizona, which was leased to the Union Oil Company of California ("Unocal"), now Union Oil.  Kinder Morgan became the

COHEN DOWD QUIGLEY

40

1 successor-in-interest to Santa Fe Pacific Pipelines, L.P, ("SFPP") following its 1997

2 acquisition of SFPP.

3    180.    Kinder Morgan and other companies operate, lease or share bulk petroleum

4 product storage and distribution terminals within the Van Buren Tank Farm.  According to

5 the WVBA RI Report, the Union Oil facility formerly operated by Unocal was situated on

6 land leased to SFFP before it was acquired by Kinder Morgan.  Information in the WVBA

7 RI Report indicates that samples obtained from the evaporation pond and process water at

8 the facility were found to contain PCE, TCE, TCA, 1,1-DCE, cis-1,2-DCE, and 1,1-DCA.

9    181.    Unocal conducted extensive site investigations of the leased facility following

10 initial discovery of groundwater contamination at the Van Buren Tank Farm in 1985.

11 According to publicly available reports, the presence of 1,2-DCA was documented in

12 subsurface soils from a boring drilled in 1988 and PCE and TCE were detected in

13 subsurface soils from a boring drilled in 1989.  Groundwater underlying the Union Oil

14 facility is also contaminated by PCE, TCE, TCA, chloroform, and methylene chloride.

15    182.    Based on the existence of detectible levels of VOCs in soil samples, the

16 existence of VOCs in groundwater beneath the Union Oil facility and the low viscosity and

17 high mobility of the VOCs, subsurface lithology and resulting transport mechanisms, the

18 VOCs released at the Union Oil facility threatened or migrated to groundwater beneath the

19 site.

20    183.    The VOCs released at the Union Oil facility are the same WVBA Site

21 contaminants of concern for which Plaintiffs have incurred response costs, consistent with

22 the NCP, to implement the ERA and address the VOC contaminated groundwater that has

23 impacted or threatens to impact RID's wells.

24    184.    Thus, based on public records, Kinder Morgan is the (1) current or former

25 owner or operator of (2) a facility where there has been (3) a release or threatened release of

26 a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

27 substances consistent with the NCP.

28    . . .

COHEN DOWD QUIGLEY

41

**The M-52 Defendants**

185.   As alleged above, the WVBA RI Report concluded that groundwater contamination in the WVBA emanates from the M-52 Superfund Site OU3 area and the EPA, in turn, has found that groundwater contamination from the OU1, OU2 and OU3 areas within the M-52 Superfund Site all combine to form the commingled plume of hazardous substances flowing into the WVBA Site.  Accordingly, each of the Defendants identified in this section below is a PRP that is jointly and severally liable to Plaintiffs under § 107 of CERCLA.

*Honeywell*

186.   Honeywell operates a facility located at 111 South 34th Street in Phoenix, Arizona, located on property leased from the City of Phoenix.  The Honeywell 34th Street facility consists of more than 130 buildings located on approximately 118 acres that is within the OU2 portion of the M-52 Superfund Site.

187.   The Honeywell 34th Street facility was constructed in 1951 and continues to operate today.  Historically, the Honeywell facility has operated under the names of AiResearch Manufacturing Company of Arizona, Garrett Turbine Engine Company, and AlliedSignal Aerospace Company.   Honeywell and its predecessors have conducted jet engine design, assembly, testing, and repair at the facility.  Solvents are known to have been used at the facility in large quantities for vapor degreasing, cleaning jet engines, and as a refrigerant.

188.   According to the December 2005 Focused Remedial Investigation Report for the Honeywell 34th Street Facility ("Honeywell RI Report"), releases of contaminants to the environment have occurred in a number of different ways and locations at the Honeywell facility.   Documented VOC releases have occurred from vapor degreasers, drywells, underground and above ground storage tanks, underground piping and trenches, chemical storage areas, solvent recycling areas, and areas of handling/transferring solvents at the Honeywell facility.  TCE, PCE, TCA, 1,2-DCE and cis-1,2-DCE are found in soils beneath Honeywell facilities on the property.



COHEN DOWD QUIGLEY

42

189.   In 1992 groundwater quality data from newly installed groundwater monitor wells indicated elevated concentrations of TCE, TCA, 1,1-DCE, DCA, vinyl chloride, and other VOCs.   In November 1992, the EPA issued a "General Notice Letter" identifying Honeywell as a PRP in the Site.

190.   In its Findings of Fact entered in connection with the M-52 CERCLA enforcement proceedings, the EPA found that "[g]roundwater contaminated with VOCs from the Motorola and Honeywell Facilities, as well as other potential sources within OU1 and OU2 commingle and flow westward into OU3, where it commingles with contamination from sources within OU3." In the Matter of:  Motorola 52nd Street Superfund Site Operable Unit 3, USEPA Region 9, Docket No. 2008-17, Administrative Settlement Agreement and Order on Consent for Remedial Investigation and Feasibility Study, Findings of Fact ¶ 17 dated August 2009.

191.   From 1992 to present Honeywell has conducted substantial and ongoing soil, soil gas and groundwater investigations, as well as soil gas and groundwater remediation. Groundwater remediation of contaminants released at this facility is ongoing as part of the M-52 Superfund Site OU2 groundwater cleanup action.

192.   According to the Honeywell RI Report, Honeywell acknowledges that VOC releases that may have occurred as early as 1951 from the 34th Street Facility have contaminated underlying groundwater and migrated offsite in westerly-northwesterly direction with comingled groundwater contamination from other sources.   Based on estimates of contaminant transport in the alluvial groundwater system, TCE contamination from the Honeywell facility may have traveled as far as 8 miles downgradient of the facility (as of the 2005 date of this Report).

193.   The VOCs released at the Honeywell International facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

194.   Thus, based on public records, Honeywell International is the (1) current or

COHEN DOWD QUIGLEY

1    former owner or operator of (2) a facility where there has been (3) a release or threatened

2    release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the

3    hazardous substances consistent with the NCP.

4                                    ***City of Phoenix***

5        195.    According to CH2MHill and Hargis & Associates, Inc., FINAL FOCUSED

6    REMEDIAL INVESTIGATION REPORT, HONEYWELL 34TH STREET FACILITY, VOL. 1 (2005)

7    ("Honeywell RI Report") the City of Phoenix owns property located at 111 South 34th

8    Street in Phoenix, Arizona within the OU2 portion of the M-52 Superfund Site.

9        196.    According to Fletcher Driscoll & Associates LLC, FINAL SUPPLEMENTAL

10   INVESTIGATION WORK PLAN, FORMER ITT CANNON FACILITY (2009) ("ITT Cannon

11   Work Plan") the City of Phoenix owns property located at 2801 East Air Lane, that is also

12   within the OU2 portion of the M-52 Superfund Site.

13                    City of Phoenix Property at 111 South 34th Street

14       197.    According to the Honeywell RI Report, the City of Phoenix leased property

15   owned by the City at 111 South 34th Street to Honeywell International, Inc., which beginning

16   in 1951, constructed extensive facilities used for the design, manufacture, assembly, testing,

17   and repair of aircraft engines and ancillary equipment.

18       198.    According to the Honeywell RI Report, VOC releases to the environment

19   have occurred in a number of different ways and locations at the Honeywell facility.

20   Documented VOC releases have occurred from vapor degreasers, drywells, underground

21   and above ground storage tanks, underground piping and trenches, chemical storage areas,

22   solvent recycling areas, and areas of handling/transferring solvents at the Honeywell facility.

23       199.    Honeywell has conducted substantial and ongoing soil, soil gas and

24   groundwater investigations at the 34th Street facility.  TCE, PCE, TCA, 1, 2-DCE and cis-1,

25   2-DCE are found in soils and groundwater beneath Honeywell facilities on the property.

26       200.    According to the Honeywell RI Report, Honeywell acknowledges that VOC

27   releases that may have occurred as early as 1951 from the 34th Street Facility have

28   contaminated underlying groundwater and migrated offsite in westerly-northwesterly

COHEN DOWD QUIGLEY

1   direction with comingled groundwater contamination from other sources.  Based on

2   estimates of contaminant transport in the alluvial groundwater system, TCE contamination

3   from the Honeywell facility may have traveled as far as 8 miles downgradient of the facility

4   (as of the 2005 date of this Report).

5   <center>City of Phoenix Property at 2801 East Air Lane</center>

6   201.   According to Fletcher, Driscoll & Associates LLC, FINAL SUPPLEMENTAL

7   INVESTIGATION REPORT, FORMER ITT CANNON FACILITY, MOTOROLA 52ND STREET

8   SUPERFUND SITE, OU2 (June, 2010) ("ITT Cannon Report"), the City of Phoenix acquired

9   the property at 2801 East Air Lane in 1935 and has owned it to the present. ITT Cannon

10  developed industrial manufacturing facilities at 2801 East Air Lane on 9.8 acres of property

11  owned by the City of Phoenix. Records in the ITT Cannon Report indicate that the U.S.

12  Government and private entities leased the property until 1959 when ITT Cannon assumed

13  the property lease.  ITT's lease ended in December 1998.  The property remains under City

14  ownership and is now entirely within the boundaries of the Phoenix Sky Harbor

15  International Airport.  Other parties have conducted operations and activities at the property

16  after ITT manufacturing ceased, including but not limited to the U.S. Government, various

17  airline and airline maintenance companies, the Phoenix Sky Harbor Airport, and the Phoenix

18  Fire Department.  The ITT facility is in the OU2 portion of the M-52 Superfund Site.

19  202.   According to the ITT Cannon Report, ITT manufactured specialty electrical

20  connectors and cable harnesses for aerospace and military customers. Operations included

21  metal machining, plating, degreasing, bonding, painting and testing of final products.

22  Solvent degreasing machines using TCE, TCA, and Freon 113 were located within the

23  manufacturing area.  A chemical storage area was located at the southwest corner of the

24  former facility.

25  203.   According to the ITT Cannon Report, TCE, PCE and 1,1-DCE have been

26  detected in soil gas and TCE and PCE is present in soils beneath the Phoenix property at

27  2801 East Air Lane.   TCE, 1,1-DCE and TCA have been detected in underlying

28  groundwater.

<center>COHEN DOWD QUIGLEY</center>

<center>45</center>

204.    The results of publicly available site characterization studies conducted at the Phoenix property at 2801 East Air Lane indicate that VOC concentrations extend to significant depths below areas of suspected VOC releases.  VOCs are present in soil and soil gas in deep borings that penetrate coarse-grained alluvial sediments that are in direct hydrologic communication with the underlying contaminated groundwater system. Groundwater beneath the Phoenix property at 2801 East Air Lane in the OU2 portion of the M-52 Superfund Site generally moves in a westerly direction toward RID's groundwater wells in the WVBA Site.

<div align="center">Allegations Relating to Both Properties</div>

205.    The VOCs released at these City of Phoenix facilities are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

206.    Thus, based on public records, the City of Phoenix is the (1) current or former owner or operator of (2) facilities where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

<div align="center">***Milum***</div>

207.    According to the WVBA RI Report, Milum owns and/or operates a facility located at 333 North 7th Avenue in Phoenix, Arizona that is within the OU3 portion of the M-52 Superfund Site.  Milum provides commercial laundering services and used PCE at the facility.

208.    According to the WVBA RI Report, Milum has been identified as a PRP for the OU3 portion of the M-52 Superfund Site and its facility is a potential source of the hazardous substances that have been released and have migrated into the WVBA Site. Among other things, Milum received a general notice from the EPA in 2005 identifying it as a PRP for contamination in the OU3 area. Based on site investigation work conducted to date, PCE, TCA and TCE are known to be present in soil gas beneath the Milum facility.

COHEN DOWD QUIGLEY

<div align="center">46</div>

1   PCE, TCE and 1,1-DCE are present in groundwater downgradient of the facility.

2   Groundwater underlying the Milum facility and in the OU3 portion of the M-52 Superfund

3   Site generally moves westerly direction toward RID's groundwater wells in the WVBA Site.

4       209.   The VOCs released at the Milum facility include the same WVBA Site

5   contaminants of concern for which Plaintiffs have incurred response costs, consistent with

6   the NCP, to implement the ERA and address the VOC contaminated groundwater that has

7   impacted or threatens to impact RID's wells.

8       210.   Thus, based on public records, Milum Textile Services Co. is the (1) current or

9   former owner or operator of (2) a facility where there has been (3) a release or threatened

10  release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the

11  hazardous substances consistent with the NCP.

12                                      *ITT Corporation*

13      211.   ITT Corporation is the successor in interest to ITT Cannon ("ITT"), which

14  leased a 9.8-acre property located at 2801 East Air Lane in Phoenix in the OU2 portion of

15  the M-52 Superfund Site.   According to the June 2010 Former ITT Cannon Facility Final

16  Supplemental Investigation Report ("ITT Final Investigation Report"), Cannon Electric

17  operated at the facility from 1960 to 1995.   ITT Corporation purchased the company in

18  1963, and leased the property from the City of Phoenix.   ITT's lease ended in December

19  1998.  The property remains under City ownership and is now entirely within the boundaries

20  of the Phoenix Sky Harbor International Airport.

21      212.   According to the ITT Final Investigation Report, ITT manufactured specialty

22  electrical connectors and cable harnesses for aerospace and military customers. Operations

23  included metal machining, plating, degreasing, bonding, painting and testing of final

24  products.  Solvent degreasing machines using TCE, TCA, and Freon 113 were located within

25  the manufacturing area.  A chemical storage area was located at the southwest corner of the

26  former facility.

27      213.   ITT was initially named a PRP for OU2 by U.S. EPA in 1992.  In cooperation

28  with, and under the direction of the ADEQ, ITT conducted investigations of soil, soil gas

COHEN DOWD QUIGLEY

1 and groundwater quality; quarterly groundwater monitoring continued through April 1996.

2 214. In 2004, ADEQ identified three areas of potential concern ("AOPCs") at the

3 facility and requested investigation of deep soil vapor conditions in those areas. ITT agreed

4 to perform a Supplemental Investigation and an AOC and Statement of Work ("SOC") was

5 signed on June 2, 2008. ITT was to conduct soil gas sampling and groundwater sampling on

6 the property. ITT submitted a work plan for ADEQ review to conduct remedial

7 investigative work. In 2010, ITT completed all work required by the AOC and ADEQ

8 and/or EPA have not asked for any additional investigation on the property at this time.

9 215. According to the ITT Final Investigation Report, TCE, PCE and DCE have

10 been detected in soil gas and TCE and PCE is present in subsurface soils beneath the facility

11 and below areas of suspected VOC releases. TCE, DCE and TCA have been detected in

12 groundwater beneath the facility.

13 216. The VOCs released at the ITT facility include the same WVBA Site

14 contaminants of concern for which Plaintiffs have incurred response costs, consistent with

15 the NCP, to implement the ERA and address the VOC contaminated groundwater that has

16 impacted or threatens to impact RID's wells.

17 217. Based on public records, ITT is the (1) current or former owner or operator

18 of (2) a facility where there has been (3) a release or threatened release of a hazardous

19 substance for (4) which Plaintiffs have incurred costs to address the hazardous substances

20 consistent with the NCP.

21 *Meritor*

22 218. According to the July 2010 FOCUSED REMEDIAL INVESTIGATION REPORT,

23 SOUTHERN PORTION - 500 S. 15TH STREET FACILITY, PHOENIX, ARIZONA ("15th Street

24 Facility RI Report"), Meritor, Inc., along with other business interests, formerly owned and

25 operated a facility located at 500 South 15th Street which is within the OU3 portion of the

26 M-52 Superfund Site. The facility is situated on approximately 28 acres in an area within the

27 City of Phoenix zoned for Heavy Industrial use. The property was primarily used for the

28 manufacturing of evaporative coolers and space heaters from approximately 1945 to 2003.

48

COHEN DOWD QUIGLEY

Industrial processes conducted at the 15th Street Facility include sheet metal stamping, metal preparation and painting, powder finishing, and final assembly of coolers and heaters. There are several buildings formerly used for manufacturing, storage, administration, and maintenance.

219. In 2003, EPA informed three companies, known as Adobe Air, Arvin Meritor, and Cooper Industries, that they were identified as PRPs for the 15th Street Facility by General Notice letter. Facility operational history records documented in the 15th Street Facility RI Report indicate all companies were former owners and/or operators of the facility. Cooper Industries is successor in interest to the McGraw Edison Company, which acquired ownership of portions of the 15th Street Facility in 1960 and full ownership by 1978. In 1982, Arvin Industries purchased the manufacturing business and Facility property and shortly thereafter changed its name to ArvinAir, Inc. Adobe Air purchased the manufacturing business from ArvinAir in 1991 and acquired land ownership in 1994. ArvinAir, Inc. merged with Meritor Automotive in 2000 to become ArvinMeritor, which has since changed its name to Meritor, Inc. Adobe Air occupied the Facility until 2003 when the property was sold to Phoenix Adobe Partners, LLC.

220. The 15th Street Facility RI Report indicates large quantities of solvent usage and numerous potential source areas associated with historical activities at the facility including: former solvent storage areas, hazardous waste storage areas, and wastewater disposal facilities. Waste streams generated on-site contained metals, paint wastes, thinners, solvents and used oil. Historical records indicate wastewater from various manufacturing processes were at one time discharged to floor drains connecting to septic systems and cesspools for subsurface disposal.

221. According to the WVBA RI Report, Meritor, Inc. has been identified as a PRP and the 15th Street Facility is a potential source of the hazardous substances that have been released and have migrated into the WVBA Site. This information is corroborated by findings in the 15th Street Facility RI Report, which indicate VOCs including TCE, PCE, and 1,1-DCE are present in the soil and soil gas beneath the facility. TCE and TCA are present

1   in sediment samples at the bottom of facility drywells and PCE and TCA is present in soil

2   gas samples in the vicinity of leaking sewer lines.

3       222.   All groundwater monitoring wells at the Facility had detectable concentrations

4   of TCE. In addition, several wells had detectable concentrations of other VOCs including

5   TCE, PCE and 1,1-DCE.  Groundwater underlying the facility and in the OU3 portion of

6   the M-52 Superfund Site generally moves in a westerly direction towards RID's groundwater

7   wells in the WVBA Site.

8       223.   The VOCs released at the Meritor, Inc. facility are the same WVBA Site

9   contaminants of concern for which Plaintiffs have incurred response costs, consistent with

10  the NCP, to implement the ERA and address the VOC contaminated groundwater that has

11  impacted or threatens to impact RID's wells.

12      224.   Thus, based on public records, Meritor, Inc. is the (1) current or former owner

13  or operator of (2) a facility where there has been (3) a release or threatened release of a

14  hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

15  substances consistent with the NCP.

16                                *APS*

17      225.   APS owns and operates a facility located at 501, 502 and 505 South 2nd

18  Avenue, in Phoenix, Arizona.  The APS facility is located in the westernmost OU3 portion

19  of the M-52 Superfund Site, just east of the WVBA Site and adjacent to the Maricopa

20  County property, which was formerly leased to Southwest Solvents.  APS is conducting

21  work under an agreement with U.S. EPA at the facility.  APS also owns and/or operates a

22  power plant and chemical lab at 408 and 410 South 43rd Avenue.

23      226.   According to the May 2010 Final Focused Remedial Investigation Report

24  ("APS Focused RI Report") portions of the 2nd Avenue Facility have been used for electrical

25  services, including a maintenance facility containing an automotive repair shop/garage,

26  transformer cleaning shop, paint and carpentry shops, and other operation support

27  functions.  APS believes that chlorinated solvents were used at its facilities beginning around

28  1959 to 1962 and ending around 1993 to 1994.  According to the facility January 2005

COHEN DOWD QUIGLEY

50

Research Report, APS used VOCs, including PCE, TCE, and TCA in the maintenance area to repair, maintain, lubricate, degrease and clean automotive parts, repair tires, decal removal, brake cleaning, and adhesion.

227.    In multiple soil investigations conducted at the APS facility and documented in the APS Focused RI Report, PCE was detected in soil samples, and PCE and TCE were detected in soil gas samples collected beneath the facility.

228.    Groundwater investigations conducted at the APS facility since 1997 have confirmed the presence of TCE, PCE, and TCA in groundwater beneath the facility.  TCE concentrations exceed AWQS.  Groundwater in vicinity of the APS facility migrates in a westward direction towards RID's groundwater wells in the WVBA.

229.    In its Findings of Fact entered in connection with the M-52 CERCLA enforcement proceedings, the EPA found that "[g]roundwater contaminated with VOCs from the Motorola and Honeywell Facilities, as well as other potential sources within OU1 and OU2 commingle and flow westward into OU3, where it commingles with contamination from sources within OU3."  In the Matter of:  Motorola 52nd Street Superfund Site Operable Unit 3, USEPA Region 9, Docket No. 2008-17, Administrative Settlement Agreement and Order on Consent for Remedial Investigation and Feasibility Study, Findings of Fact ¶ 17, dated August 2009.

230.    The VOCs released at the APS facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

231.    Thus, based on public records, APS is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### *UPRR*

232.    In addition to the property that UPRR formerly owned in the WVBA, UPRR

COHEN DOWD QUIGLEY

also formerly owned and operated a facility facilities located at 1301 East Jackson Street that is within the OU3 portion of the M-52 Superfund Site.  The property at 1301 East Jackson Street is referenced in the July 2005 RESEARCH REPORT – WALKER POWER SYSTEMS SITE 1301 EAST JACKSON PHOENIX ARIZONA 85034 ("Research Report").

233.    According to the Research Report, beginning in 1938 or earlier, predecessors of UPRR acquired the parcel at 1301 East Jackson Street as a rail spur and owned this property until 1998.  Beginning in 1975 or thereafter, Walker Power Systems (through predecessor affiliates) began operations on the 1301 East Jackson property, including the UPRR property and an 11-acre parcel contiguous with and east of the UPRR parcel.  Walker Power Systems manufactured, repaired, and overhauled turbine engines, air conditioning units, and electric generators for military and civilian applications.  Walker Power Systems utilized the UPRR parcel for hazardous waste and chemical storage, among other uses.  In 1998, UPPR sold its interest in the property at 1301 East Jackson to an entity that leased back the property to Walker Power Systems.

234.    According to the Research Report, TCE and TCA were used in large quantities at the Walker Power Systems facility for vapor degreasing and aluminum parts cleaning.  Documented releases of VOCs to the subsurface were reported in 1983 when the Arizona Department of Health Services became aware that Walker Power Systems had routinely discharged sump liquids containing "numerous chemicals and solvents" to soils in the railroad loading dock.

235.    According to the Research Report, ADEQ and EPA have found violations of hazardous waste regulations by Walker Power Systems and have required past investigations of soil and groundwater contamination.  Among other findings, the paved hazardous waste storage area contained two drywells.  Subsequent sampling within one of the drywells confirmed the presence of TCE and TCA in liquids and sludge at the base of the drywell; PCE and other chlorinated solvent compounds were not analyzed.

236.    Walker Power Systems conducted a series of soil and groundwater investigations in response EPA requests and hazardous waste violations issued.  According

1   to the Phase I Remedial Investigation Report for the Walker Power Systems Site dated June

2   2009, TCE, TCA, and other VOCs that are thought to be degradation products of these

3   primary chlorinated solvents, have been found in soil, and soil gas at the UPRR property, in

4   the areas where the VOC releases occurred.

5        237.   According to the report entitled Subsurface Investigation – Tiernay Turbines,

6   Inc. Phoenix, Arizona (August, 1994), VOCs including PCE, TCE, TCA and 1,1-DCE are

7   present in groundwater beneath the facility.  The Research Report indicates the observed

8   VOCs may originate from offsite sources except at one location where the results of samples

9   collected from drywell liquids and sediments, soil, soil gas, and groundwater monitoring are

10   consistent with on-site contamination from VOC releases down a drywell at the Walker

11   Power Systems site.

12        238.   EPA issued a General Notice Letter to UPRR and other owner operators of

13   the property at 1301 East Jackson Street, on September 3, 2003 and a Special Notice Letter

14   on March 26, 2004, naming each as a PRP within the OU3 Site.

15        239.   The VOCs released at the former UPRR property located at 1301 East

16   Jackson Street are the same WVBA Site contaminants of concern for which Plaintiffs have

17   incurred response costs, consistent with the NCP, to implement the ERA and address the

18   VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

19        240.   Thus, based on public records, UPRR is the (1) current or former owner or

20   operator of (2) multiple facilities where there has been (3) a release or threatened release of a

21   hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous

22   substances consistent with the NCP.

23                            ***Walker Power Systems***

24        241.   According to the July 2005 RESEARCH REPORT – WALKER POWER SYSTEMS

25   SITE 1301 EAST JACKSON PHOENIX ARIZONA 85034 ("Research Report"), Walker Power

26   Systems owns and/or operates a facility located on several parcels spread over approximately

27   13 acres at 1301 East Jackson Street in Phoenix, Arizona which is within the OU3 portion of

28   the M-52 Superfund Site.

COHEN DOWD QUIGLEY

242.   The facility is presently used by Walker Power Systems to repair and overhaul diesel electric generators that the military uses as an auxiliary power source on tanks.  In the past, Walker Power Systems manufactured, repaired, and overhauled turbine engines, air conditioning units, and electric generators for military and civilian applications.  Walker Power Systems is the current name of the corporation that is lessee and operator of the manufacturing and repair operations at 1301 East Jackson Street.  Walker Power Systems has undergone several name changes since 1975 when a predecessor to Walker Power Systems began manufacturing operations.  Walker Power Systems operated as Tiernay Turbines and Tiernay Manufacturing in the past.  Tiernay Manufacturing acquired the 11-acre parcel comprising the largest portion of the Walker Power Systems site in August 1982.

243.   According to the Research Report, TCE and TCA were used in large quantities at the facility for vapor degreasing and aluminum parts cleaning.  Documented releases of VOCs to the subsurface were reported in 1983 when the Arizona Department of Health Services became aware that Walker Power Systems had routinely discharged sump liquids containing "numerous chemicals and solvents" to soils in the railroad loading dock.  VOC releases are also documented at drywells in a paved hazardous waste storage area.

244.   According to the Research Report, ADEQ and EPA have found violations of hazardous waste regulations by Walker Power Systems and have required past investigations of soil and groundwater contamination. Among other findings, the paved hazardous waste storage area contained two drywells.  Subsequent sampling within one of the drywells confirmed the presence of TCE and TCA in liquids and sludge at the base of the drywell; PCE and other chlorinated solvent compounds were not analyzed.

245.   Walker Power Systems conducted a series of soil and groundwater investigations in response EPA requests and hazardous waste violations issued.   According to the Phase I Remedial Investigation Report for the Walker Power Systems Site dated June 2009, TCE, TCA, and other VOCs that are thought to be degradation products of these primary chlorinated solvents, have been found in wastes disposed in a drywell and in soil, and soil gas at the Walker Power Systems site.

54

246.    According to the August 1994 report entitled Subsurface Investigation – Tiernay Turbines, Inc. Phoenix, Arizona, VOCs including PCE, TCE, TCA and 1,1-DCE are present in groundwater beneath the facility.  The Research Report indicates the observed VOCs may originate from offsite sources except at one location where the results of samples collected from drywell liquids and sediments, soil, soil gas, and groundwater monitoring are consistent with on-site contamination from VOC releases down a drywell at the Walker Power Systems site.

247.    The EPA issued a General Notice Letter to Walker Power Systems, and other owner operators of the property at 1301 East Jackson Street, on September 3, 2003 and a Special Notice Letter on March 26, 2004, naming each as a PRP within the OU3 Site.

248.    According to the WVBA RI Report, Walker Power Systems, Inc. has been identified as a PRP and is a source of the hazardous substances from the OU3 portion of the M-52 Site that have been released and have migrated into the WVBA Site.

249.    The VOCs released at the Walker Power Systems, Inc. facility are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

250.    Thus, based on public records, Walker Power Systems, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### Freescale

251.    Freescale was formerly a division of the Semiconductor Products Sector of Motorola Inc.  Freescale is a successor to Motorola, Inc. and is answerable for Motorola's CERCLA liability.

252.    The Motorola 52nd Street plant complex is a "facility" as defined in 42 U.S.C. § 9601(9).

253.    As alleged in greater detail below, hazardous substances were disposed of at

COHEN DOWD QUIGLEY

the Motorola 52nd Street facility.  At the time the hazardous substances were disposed of, Motorola owned and/or operated the Motorola 52nd Street facility.

254.  The Motorola 52nd Street facility was originally constructed in 1956 and was in operation until the third quarter of 1999 when Motorola's Communications, Power and Signal Group was split off to become ON Semiconductor.  In April 2004, Motorola spun off its semiconductor sector into Freescale Semiconductor, Inc.

255.  Until 1963, there was no municipal sewer serving the site.  On-site disposal of domestic and industrial waste, therefore, was accomplished by way of tanks, leaching fields, drywells, pits, sumps, and surface disposal areas.  The types of wastes that were released to the environment at the facility are: solvents, acids, cyanides, and sanitary sewage.  Solvents, such as TCE, TCA, Freon, and PCE were used at various Motorola operations at the facility.

256.  Three primary source areas of contamination at the Motorola 52nd Street facility are the Courtyard, the Acid Treatment Plant, and the Southwest Parking Lot.

257.  The Courtyard was the site of a 5,000-gallon TCA underground storage tank and a drywell that was approximately three feet in diameter and 15 feet deep.  The drywell received solvents, mainly TCE and TCA, from 1963 to 1974.  Soils and groundwater have been impacted with chlorinated solvents in this area.

258.  From 1974 to 1976, the Southwest Parking Lot area was used extensively as a main staging area for waste chemicals stored in 55-gallon drums that were suspected of leaking.

259.  In November 1982, Motorola discovered a discrepancy in the inventory records for 1,1,1-trichloroethane (TCA) at the Motorola 52nd Street facility. In January 1983, the tests on the TCA tank and other underground tanks used for storing virgin solvents indicated that the TCA tank was leaking.

260.  Based on conservative assumptions, Motorola disposed of approximately 200,000 gallons of chlorinated solvents at the Motorola 52nd Street facility between the late 1950s and 1983.  According to EPA website materials, "investigations determined that the soil and groundwater [at the Motorola facility site] is contaminated with a variety of" VOCs

COHEN DOWD QUIGLEY

"that were used in Motorola's semiconductor manufacturing operations" and that "[h]istorical spills and other releases of commercial and industrial solvents at the Motorola 52nd Street Plant and other [Motorola] facilities…reached the groundwater, causing the groundwater to become contaminated."

261.    From January 1983 to December 1983, Motorola conducted a preliminary investigation that included the installation of 29 monitor wells.  A report was submitted to ADEQ in December 1983.  Analytical data indicated soil and groundwater contamination on the facility site, and groundwater contamination continuing to the west of the property.

262.    From October 1984 to June 1987, Motorola completed a Remedial Investigation/Feasibility Study, which identified 28 potential sources of contaminants, the principal one being the Courtyard area.

263.    In 1983, ADEQ discovered groundwater contamination in the area now known as OU2.  TCE was detected at the Desert Hills Well, located at Monroe and 27th Street, at 640 ppb, at the Security Center Well, located at Central Avenue and Van Buren, at 202 ppb, and at the Eastlake Park Well, located at Jefferson and 16th Street, at 44 ppb.

264.    From 1985 to 1989, ADEQ conducted an RI and initiated an investigation of PRPs.  In 1987, the East Washington (EW) area was listed on ADEQ's WQARF Priority List.  The study areas were determined to be Thomas Road to the north, Lower Buckeye Road to the south, 48th Street to the east, and 7th Avenue to the west. (7th Avenue is the eastern boundary of the WVBA WQARF site containing RID wells).

265.    From 1990 to 1992, ADEQ and Motorola continued the area-wide groundwater investigation to define the extent of groundwater contamination.  Area-wide sampling events were coordinated to include Motorola wells and EW wells.  The extent of groundwater contamination prompted ADEQ and EPA to develop OU2 to address groundwater contamination before selecting a final remedy.  Motorola submitted the RI report to ADEQ, which confirmed that contamination migrating from the Motorola facility had extended into the EW area.

266.    According to the Record of Decision issued by the EPA and ADEQ in July

COHEN DOWD QUIGLEY

1   1994, the Motorola contamination extends beyond the EW WQARF site and into the

2   WVBAWQARF site to approximately 75th Avenue.

3       267.    Additionally, according to the WVBA RI Report, groundwater data indicates

4   that TCE, PCE and 1,1-DCE groundwater contamination originates from the OU3 (EW)

5   area east of Seventh Avenue and flows into the WVBA WQARF site from the east.

6       268.    The VOCs released at the Freescale/Motorola facilities are the same

7   contaminants of concern for which Plaintiffs have incurred response costs, consistent with

8   the NCP, to implement the ERA and address the VOC contaminated groundwater that has

9   impacted or threatens to impact RID's wells.

10      269.    Thus, based on public records, Freescale Semiconductor, Inc./Motorola, Inc.

11  is the (1) current or former owner or operator of (2) a facility where there has been (3) a

12  release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred

13  costs to address the hazardous substance consistent with the NCP.

14                                       ***SRP***

15      270.    According to the SRP 16th Street Research Report, Motorola 52nd Street

16  Operable Unit III Superfund Site (2004), ("Research Report"), SRP owns and operates a

17  facility located at 1616 East Lincoln Street in Phoenix, Arizona ("the SRP 16th Street

18  facility").  Numerous operations and activities have been conducted at the facility from 1921

19  to the present.   Principal activities have included warehousing, storage of electrical

20  equipment, storage of aquatic weed control chemicals, vehicle service and repair, meter and

21  radio repair, electrical construction and maintenance support, and material salvage and

22  reclamation.  The facility also has housed a chemistry lab, print shop, hydrographic shop, a

23  central line dispatch office, and a carpentry shop.

24      271.    Chemical products used and wastes generated at the facility have varied over

25  time with changes in operations but have included solvents known to contain PCE and TCA

26  in large quantities.  According to the Research Report, most of the bulk solvent at the facility

27  was used by the Electric Shop, the Transportation Garage, the Repair Garage and Paint and

28  Body Shop, and the Heavy Equipment Garage.

COHEN DOWD QUIGLEY

272.   According to the Research Report, there have been a total of 13 sumps and grease trap interceptors connected to the sewer and storm drain system and 14 drywells, reported or confirmed, at the facility.  Ten of the 14 dry wells reportedly were catch basins or gravel drain wells, constructed in the early 1950s to provide drainage for the facility.  The catch basins and gravel drain wells generally were constructed to a depth of approximately 10 to 12 feet below ground surface or to the sand and gravel unit. VOCs were likely discharged from certain of the drywells located near the Electric Shop.

273.   Because of groundwater contamination detected in the surrounding area during early site characterization of the East Washington WQARF Site (which predated EPA action to assume a lead regulatory role and designate this area as part of M-52 OU2), SRP conducted a series of soil and groundwater investigations at the SRP 16th Street Facility beginning in 1989 to characterize the potential for releases of VOCs from SRP operations.

274.   According to the January 2009 Revised Final Focused Remedial Investigation Report for Salt River Project's 16th Street Facility, PCE, TCE and TCA were detected in shallow soil gas samples collected at the facility and PCE was present in subsurface soil samples.  The greatest PCE concentrations were in deep soil gas samples adjacent to certain grease traps, sumps, and drywells investigated as possible source areas.

275.   SRP began quarterly groundwater quality monitoring at four on site monitor wells in February 2001.  Analytical results indicated that groundwater beneath the facility contained VOCs that are WVBA Site contaminants of concern (COCs), including TCE and 1,1-DCE in concentrations exceeding the AWQS.  Groundwater in the vicinity of the SRP 16th Street facility generally migrates in a westerly direction in response to RID pumping in the WVBA Site.

276.   Based on the existence of detectible levels of VOCs in soil gas samples, the existence of VOCs in groundwater beneath the SRP 16th Street facility and the low viscosity and high mobility of the VOCs, subsurface lithology and resulting transport mechanisms, the VOCs released at the SRP 16th Street facility threatened or migrated to groundwater at the site.

277.   The VOCs released at the SRP facilities are the same contaminants of concern that have caused Plaintiffs to incur response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

278.   Thus, based on public records, SRP is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

## The WCP Area Defendants

279.   As alleged above, the WVBA RI Report concluded that groundwater contamination in the WVBA also emanates from WCP Area WQARF sites to form another commingled plume of hazardous substances flowing into the WVBA Site.  Specifically, the WVBA RI Report found that the facilities owned and/or operated by Defendants Corning, NUCOR and Textron "have been identified as likely sources of groundwater contamination in the WOC" that flow into the WVBA Site.  Reports issued by WOC owner/operators further indicate that downgradient migration of groundwater contamination from the EGA WQARF Site has commingled with the WOC plume.  An ADEQ Fact Sheet identifies the former Van Waters and Rogers facility, now the responsibility of Defendant Univar, as the primary source of contamination at the EGA Site.  Accordingly, each of these Defendants, as further described in the section below is a PRP that is jointly and severally liable to Plaintiffs under § 107 of CERCLA.

### Corning

280.   As indicated in the July 2004 West Osborn Complex Remedial Investigation Report ("WOC RI Report"), Corning formerly owned and operated a 15-acre property located at 3536 West Osborn Road in Phoenix, Arizona from which there has been a release of hazardous substances such as PCE, TCE and other solvent compounds.  Corning manufactured electronic components at the facility from 1971 to 1976 and used TCE as a solvent.  Other electronics companies owned this parcel and conducted manufacturing

60

operations at the site prior to Corning's acquisition of the property.  Corning sub-divided and sold the property between 1976 and 1978 to other business interests, some of which continued the manufacturing of electronic components.  Corning Glass Works changed its name to Corning Incorporated in 1989.  The 15-acre property formerly owned by Corning and others was originally part of the West Central Phoenix WQARF Site in 1987 and later designated the WOC WQARF Site in 1998.

281.    Because of VOCs detected in City of Phoenix production wells downgradient of the WOC Site in 1982, the Arizona Department of Health Services ("ADHS"), and later the ADEQ, conducted site investigation of this property to characterize the release.  The WOC RI Report indicates the early history of waste disposal at the WOC Site consisted of septic tanks and seepage pits.  Seventeen seepage pits and five septic tanks have been discovered on the property.  High concentrations of TCE were present in samples of septic tank contents.

282.    According to the WOC RI Report, TCE and lesser concentrations of PCE, and 1,1-DCE are present in both soil and soil gas samples obtained over widespread areas of the WOC Site.  The distribution of TCE confirms surface disposal of TCE associated with certain septic tanks and seepage pits.

283.    Extensive groundwater investigations have been conducted at the WOC Site. According to the WOC RI Report, PCE, TCE, and, 1,1-DCE, are present in the shallow groundwater subsystem ("SGWS") and lower sand and gravel subunit ("LSGS") underlying the WOC Site.  The WOC RI Report indicates that VOCs released to soils at the WOC migrates to the water table where the VOCs become incorporated in groundwater.  The WOC RI Report further states that the TCE in the SWGS moves off site and migrates to the south-southeast where the lateral extent of contamination has not been defined. Groundwater containing TCE in the LSGS moves to the southwest.  The WVBA Site is south of the WOC Site.  The WVBA RI Report confirms that contaminated groundwater associated with the upgradient WOC Site is entering the WVBA from the north.

284.    The VOCs in groundwater contamination at the WOC Site and shown to

COHEN DOWD QUIGLEY



migrate to the WVBA Site are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

285.   Thus, based on public records, Corning Incorporated is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### *NUCOR*

286.   As indicated in the WOC RI Report, Nucor Corporation formerly owned and operated a 15-acre property located at 3536 West Osborn Road in Phoenix, Arizona from which there has been a release of hazardous substances such as TCE, PCE, and other solvent compounds. Nucor manufactured electronic components, through their subsidiary U.S. Semcor, at the facility from 1962 to 1965 and used TCE as a solvent.  Other electronics companies owned this parcel and conducted manufacturing operations at the site before and after Corning's acquisition and operation at the WOC property.  The 15-acre property formerly owned by Nucor and others was originally identified as part of the West Central Phoenix WQARF Site in 1987 and later designated the WOC WQARF Site in 1998.

287.   Because of VOCs detected in City of Phoenix production wells downgradient of the WOC in 1982, the ADHS, and later the ADEQ, conducted site investigation of this property to characterize the release.  The WOC RI Report indicates the early history of waste disposal at the WOC facility consisted of septic tanks and seepage pits.  Seventeen seepage pits and five septic tanks have been discovered on the property.   High concentrations of TCE were present in samples of septic tank contents.

288.   According to the WOC RI Report, TCE and lesser concentrations of PCE, and 1,1-DCE are present in both soil and soil gas samples obtained over widespread areas of WOC.  The distribution of TCE confirms surface disposal of TCE associated with certain septic tanks and seepage pits.

COHEN DOWD QUIGLEY

62

289.    Extensive groundwater investigations have been conducted at the WOC Site. According to the WOC RI Report, PCE, TCE, and, 1,1-DCE, are present in the SGWS and LSGS underlying the WOC Site.  The WOC RI Report indicates that VOCs released to soils at the WOC migrates to the water table where the VOCs become incorporated in groundwater.  The WOC RI Report further states that the TCE in the SWGS moves off site and migrates to the south-southeast where the lateral extent of contamination has not been defined.  Groundwater containing TCE in the LSGS moves to the southwest.  The WVBA Site is south of the WOC Site.   The WVBA RI Report confirms that contaminated groundwater associated with the upgradient WOC Site is entering the WVBA from the north.

290.    The VOCs in groundwater contamination at the WOC Site and shown to migrate to the WVBA Site are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

291.    Thus, based on public records, Nucor Corporation is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### Textron

292.    As indicated in the WOC RI Report, United Industrial Corporation ("UIC") a wholly owned subsidiary of Textron, formerly owned and operated a 15-acre property located at 3536 West Osborn Road in Phoenix, Arizona from which there has been a release of hazardous substances such as PCE, TCE and other solvent compounds.   UIC manufactured electronic components at the facility from 1959 to 1962 and used TCE as a solvent.   Another electronics company briefly owned this parcel and conducted manufacturing operations at the site prior to UIC's acquisition of the property.  Several other companies continued the manufacturing of electronic components once UIC sold the

COHEN DOWD QUIGLEY

property.  The 15-acre WOC property formerly owned by UIC and others was originally identified as part of the West Central Phoenix WQARF Site in 1987 and later designated the WOC WQARF Site in 1998.  Textron acquired UIC by merger in 2007.

293.    Because of VOCs detected in City of Phoenix production wells downgradient of the WOC Site in 1982, the ADHS, and later ADEQ, conducted site investigation of this property to characterize the release.  The WOC RI Report indicates the early history of waste disposal at the WOC Site consisted of septic tanks and seepage pits.  Seventeen seepage pits and five septic tanks have been discovered on the property.  High concentrations of TCE were present in samples of septic tank contents.

294.    According to the WOC RI Report, TCE and lesser concentrations of PCE, and 1,1-DCE are present in both soil and soil gas samples obtained over widespread areas of the WOC.  The distribution of TCE confirms surface disposal of TCE associated with certain septic tanks and seepage pits.

295.    Extensive groundwater investigations have been conducted at the WOC Site. According to the WOC RI Report, PCE, TCE, and, 1,1-DCE, are present in the SGWS and LSGS underlying the WOC Site.  The WOC RI Report indicates that VOCs released to soils at the WOC migrates to the water table where the VOCs become incorporated in groundwater.  The WOC RI Report further states that the TCE in the SWGS moves off site and migrates to the south-southeast where the lateral extent of contamination has not been defined.  Groundwater containing TCE in the LSGS moves to the southwest.  The WVBA Site is south of the WOC Site.   The WVBA RI Report confirms that contaminated groundwater associated with the upgradient WOC Site is entering the WVBA from the north.

296.    The VOCs in groundwater contamination at the WOC Site and shown to migrate to the WVBA Site are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

297.   Thus, based on public records, Textron Incorporated, as the parent company of UIC, is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substances consistent with the NCP.

### *Univar*

298.   In addition to its property located in the WVBA Site, VW&R also previously owned and operated a facility located at 27th Avenue and Osborn Property (the "West Osborn Facility") that is within the WCP-EGA WQARF Site.  VW&R merged with United Pacific Corporation in 1966 to form VWR United Corporation, which subsequently changed its name to Univar Corporation.

299.   According to the Final Remedial Investigation Report for the WCP East Grand Avenue WQARF Site ("the EGA RI Report"), VW&R operated the EGA Site from 1957 to 1970.   Operations included warehousing and distribution of industrial and agricultural chemical products, upholstery supplies, and laundry and dry cleaning supplies. In 1970, VW&R sold the property at 27th Avenue and Osborn and moved the operation to its current location at 50 South 45th Avenue.

300.   Because of VOC groundwater contamination detected in several City of Phoenix wells located in the WCP Area, ADEQ requested that an investigation be conducted at the EGA Site to evaluate whether a release of VOCs had occurred, and if so, to identify the extent and nature of the release.

301.   According to the EGA RI Report, TCE, PCE, and other solvent compounds are found in both soil and soil gas samples obtained beneath the EGA Site.   The contamination in soils extends to significant depths and is observed in the capillary fringe just above the water table.

302.   Extensive groundwater investigation conducted at the EGA Site indicate groundwater is contaminated by TCE, PCE, and other solvent compounds.  The observed VOC concentrations are highest in groundwater collected from on-site VW&R and downgradient wells, indicating, as stated in the EGA RI Report, that the West Osborn

COHEN DOWD QUIGLEY

Facility was a source of the contamination present in groundwater. The shallow groundwater beneath the EGA Site generally flows to the southwest, but may be locally influenced by pumping that occasionally occurs at a Salt River Project well located 2,000 feet west of the VW&R site.

303. Groundwater monitoring data and interpretation reported in the Final Feasibility Study Report for the Shallow Groundwater System of the WCP-WOC WQARF Site, indicate anomalously high TCE concentrations in shallow groundwater in a portion of the WOC plume are attributed to source contribution from the EGA Site and is moving southwest to the WVBA toward RID's groundwater wells.

304. The VOCs released at the EGA Site are the same WVBA Site contaminants of concern for which Plaintiffs have incurred response costs, consistent with the NCP, to implement the ERA and address the VOC contaminated groundwater that has impacted or threatens to impact RID's wells.

305. Thus, based on public records, Univar is the (1) current or former owner or operator of (2) multiple facilities where there has been (3) a release or threatened release of a hazardous substance for (4) which Plaintiffs have incurred costs to address the hazardous substance consistent with the NCP.

**FIRST CLAIM FOR RELIEF**

**CERCLA Section 107 Claim for Costs**

306. Plaintiffs incorporate all of the foregoing allegations herein by reference.

307. Each Defendant identified above owns and/or operates or formerly owned and/or operated a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

308. There has been a release, threatened release and/or disposal, as defined in Sections 101(22) and 101(29) of CERCLA, 42 U.S.C. § 9601(22) and (29), of one or more hazardous substances at and/or from the facility or facilities owned and/or operated or formerly owned and/or operated at the time of the release, threatened release or disposal by each Defendant named in this action. The nature of these releases, threatened releases or disposals is based, in part, on the specific public documents referenced and described above.

COHEN DOWD QUIGLEY

309.   As set forth above, the presence of hazardous substances in the soil and/or groundwater at the facility or facilities owned and/or operated or formerly owned and/or operated by each Defendant above demonstrates that a release occurred at each facility.

310.   The hazardous substances that have been released or threatened to be released from the facilities owned and/or operated or formerly owned and/or operated at the time of the release or threatened release by Defendants have migrated and contaminated or threaten to migrate and contaminate the groundwater underlying the WVBA WQARF Site, and have impacted or threaten to impact RID's groundwater supply wells which are located in the WVBA WQARF Site.

311.   As alleged above, because of the releases or threatened releases of hazardous substances from the facilities owned and/or operated or formerly owned and/or operated at the time of the release or threatened release by Defendants identified above, Plaintiffs, on behalf of G&K and RID, have incurred necessary response costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25) and, therefore, are entitled to bring this action against Defendants and to otherwise be reimbursed for the response costs Plaintiffs incurred as a result of their CERCLA response activities described above.

312.   In order to eliminate any uncertainty that RID's incurred costs were substantially compliant with the NCP, Plaintiffs, on behalf of G&K and RID, substantially complied with the requirements identified by EPA as potentially applicable to private actions. *See* 40 C.F.R. § 300.700(c)(5)-(7); 55 Fed. Reg. 8666, 8794 (1990).  Specifically, RID's ERA substantially complies with the applicable worker and safety health provisions, the documentation requirements, the most appropriate technology and expertise for a response action, the applicable and relevant and appropriate requirements in ADEQ and Maricopa County environmental policies, the requirements outlined for a "removal action" or a "remedial action," and the community involvement requirements.

313.   Each Defendant is jointly and severally liable to Plaintiffs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the response costs Plaintiffs have directly incurred, on behalf of RID and G&K.  Further, each Defendant is jointly and severally liable for all

COHEN DOWD QUIGLEY

1   future costs that Plaintiffs may incur, on behalf of G&K and RID, that are recoverable
2   under CERCLA and compliant with the NCP requirements applicable to private party
3   actions.

### SECOND CLAIM FOR RELIEF

### CERCLA Section 113 Claim for Declaratory Relief

6   314.   Plaintiffs incorporate all of the foregoing allegations herein by reference.

7   315.   Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs
8   are entitled to a declaration of each Defendant's joint and several liability for future response
9   costs incurred by Plaintiffs that are recoverable under CERCLA and compliant with the
10  NCP requirements applicable to private party actions.

### PRAYER FOR RELIEF

12  WHEREFORE, Plaintiffs Spinnaker Holdings, LLC and Synergy Environmental,
13  LLC respectfully request entry of judgment in their favor against each of the Defendants
14  identified above, jointly and severally, as follows:

15          a.   Awarding Plaintiffs all of their recoverable response costs, in an
16  amount to be determined at trial, incurred on behalf of RID and G&K in response to the
17  releases or threatened releases of hazardous substances from the facilities owned and/or
18  operated or formerly owned and/or operated by Defendants, with pre-judgment interest
19  pursuant to 42 U.S.C. § 9607(a) from the date of expenditure;

20          b.   Declaring each Defendant jointly and severally liable for all future costs
21  recoverable under CERCLA that Plaintiffs will incur in responding to the releases or
22  threatened releases of hazardous substances from the facilities owned and/or operated or
23  formerly owned and/or operated by Defendants;

24          c.   For such other relief as the Court deems just and proper.

25  . . .

26  . . .

27  . . .

28  . . .

COHEN DOWD QUIGLEY

68

DATED this 16th day of December, 2016.

COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Plaintiffs

By: /s/
    Daniel E. Durchslag
    Gabriel R. Aragon

COHEN DOWD QUIGLEY

## VERIFICATION

I, Jim Madole, declare:

1.      I am a resident of Grayson County, Texas.  I am over the age of 18 and am competent to make this verification.

2.      I am a principal of Spinnaker Holdings, LLC and I am authorized to make this verification on its behalf in connection with its Verified Complaint filed in the United States District Court for the District of Arizona against the defendants as noted in the matter captioned Spinnaker Holdings, LLC v. City of Phoenix, et al. filed on December 16, 2016.

3.      I reviewed the Verified Complaint and believe its contents to be true to the best of my information, knowledge and belief.  For matters outside my personal knowledge that are alleged to be upon information and belief, as to those matters I believe the Verified Complaint to be true and accurate.

4.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED this _16_ day of December, 2016.

_____
Jim Madole

## **VERIFICATION**

I, Dennis Shirley, declare:

1.      I am a resident of Maricopa County, Arizona. I am over the age of 18 and am competent to make this verification.

2.      I am a principal of Synergy Environmental, LLC and I am authorized to make this verification on its behalf in connection with its Verified Complaint filed in the United States District Court for the District of Arizona against the defendants as noted in the matter captioned Spinnaker Holdings, LLC v. City of Phoenix, et al. filed on December 16, 2016.

3.      I reviewed the Verified Complaint and believe its contents to be true to the best of my information, knowledge and belief. For matters outside my personal knowledge that are alleged to be upon information and belief, as to those matters I believe the Verified Complaint to be true and accurate.

4.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 16th day of December, 2016.

Dennis Shirley